# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 Cases |
|  | : |  |
| TOUSA, INC., *et al.*, | : | Case No. 08-10928-JKO |
| Debtors. | : |  |
|  | : | Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED | : |  |
| CREDITORS OF TOUSA, INC., *et al.*, | : |  |
|  | : |  |
| Plaintiff, | : | Adv. Pro. No. 08-01435 |
| vs. | : |  |
| CITICORP NORTH AMERICA, INC., *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |

## MOTION BY CITICORP NORTH AMERICA, INC., IN ITS CAPACITY AS ADMINISTRATIVE AGENT FOR THE REVOLVING CREDIT AGREEMENT, TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

SMITH HULSEY & BUSEY
225 Water Street, Suite 1800
Jacksonville, Florida 32202
Telephone: (904) 359-7700
Facsimile: (904) 359-7708

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Attorneys for Citicorp North America, Inc.,*
*in its Capacity as Administrative Agent for*
*the First Lien Revolver*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................2

BACKGROUND ....................................................................................................4

    A.    The 2005 Transeastern Acquisition ...........................................5

    B.    The March 2006 Revolver ......................................................5

    C.    The Transeastern Litigation ...................................................6

    D.    The October 2006 Amendment ...............................................7

    E.    The January 2007 Amendment ................................................7

    F.    The Transeastern Settlement ..................................................8

    G.    The July 2007 Financing..........................................................8

    H.    The Fraudulent Conveyance Claim Against The Revolver .......................10

ARGUMENT .....................................................................................................11

I.    The Complaint Should Be Dismissed as it Fails Adequately to Plead Any
Transfers to Be Avoided on the Revolver ..............................................................12

    A.    The Guaranty Obligations......................................................14

    B.    The Repayment Obligations ...................................................15

    C.    Liens on Assets and Real Property.........................................16

    D.    The Insufficiency of the Committee's Omnibus Allegations....................17

II.    If the Complaint is Not Dismissed, the Court Should Order a More Definite
Statement.......................................................................................................19

CONCLUSION ..................................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc. (In re Ames Dep't Stores, Inc.),
    161 B.R. 887 (Bankr. S.D.N.Y. 1993)........................................................12-13 n.10

Anderson v. District Bd. of Trustees of Cent. Fla. Community College,
    77 F.3d 364 (11th Cir. 1996)...............................................................................20-21

Associated Builders, Inc. v. Alabama Power Co.,
    505 F.2d 97 (5th Cir. 1974).................................................................................11 n.9

Berry v. Coleman,
    172 Fed. Appx. 929 (11th Cir. 2006)..................................................................11 n.9

Burns v. Rice,
    39 F. Supp. 2d 1350 (M.D. Fla. 1998)...............................................................5-6 n.4

Cohen v. Morgan Schiff & Co. (In re Friedman's Inc.),
    385 B.R. 381 (S.D. Ga. 2008) ............................................................................13, 18

Fin. Sec. Assurance, Inc. v. Stephens, Inc.,
    450 F.3d 1257 (11th Cir. 2006)............................................................................5 n.4

Friedman v. Ginsburg (In re David Jones Builder, Inc.),
    129 B.R. 682 (Bankr. S.D. Fla. 1991) ......................................................................19

Gersten v. Rundle,
    833 F. Supp. 906 (S.D. Fla. 1993) ......................................................................11 n.9

Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.),
    339 B.R. 570 (Bankr. D. Del. 2006)...................................................................13, 18

Goldberg v. Countrywide Home Loans, Inc. (In re Seaway Int'l Trans., Inc.),
    341 B.R. 333 (Bankr. S.D. Fla. 2006) ..............................................................12 n.10

Kepler v. Weis (In re Weis),
    92 B.R. 816 (Bankr. W.D. Wis. 1988) .......................................................................19

La Grasta v. First Union Sec., Inc.,
    358 F.3d 840 (11th Cir. 2004) .............................................................................. 5 n.4

Lockwood v. Beasley,
    211 Fed. Appx. 873 (11th Cir. 2006) ................................................................... 5 n.4

Official Comm. of Unsecured Creditors v. State (In re Tower Envtl., Inc.),
    260 B.R. 213 (Bankr. M.D. Fla. 1998) ............................................................. 12 n.10

Pedraza v. Coca-Cola Co.,
    456 F. Supp. 2d 1262 (N.D. Ga. 2006) .............................................................. 11 n.9

Perkins v. Crown Fin., LLC, (In re Int'l Mgmt. Assocs. LLC),
    No. 06-6421, 2007 Bankr. LEXIS 1566 (Bankr. N.D. Ga. Mar. 6, 2007) ............ 13, 20

Rosen v. MIF Realty, L.P. (In re Vuckovic),
    211 B.R. 1002 (Bankr. M.D. Fla. 1997) ...................................................................16

TWA Inc. Post Comfirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post
Confirmation Estate),
    305 B.R. 228 (Bankr. D. Del. 2004) .........................................................................18

Venezia Amos, LLC v. Favret,
    No. 07-0146, 2008 WL 410163 (N.D. Fla. Feb. 12, 2008) ................................... 6 n.4

Venice Western Motel, Ltd. v. Venice Motor Inn, Ltd. (In re Venice Western
Motel, Ltd.),
    67 B.R. 777 (Bankr. M.D. Fla. 1986) .......................................................................16

## STATUTES AND RULES

11 U.S.C. § 548 ..................................................................................... 12, 12-13 n.10

FED. R. BANKR. P. 7012 ....................................................................................................1

FED. R. CIV. P. 12 ............................................................................................... passim

**TREATISES**

COLLIER ON BANKRUPTCY ..............................................................................................16

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE.................................. 11 n.9, 20

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | : | Chapter 11 Cases |
| | : | |
| TOUSA, INC., *et al.*, | : | Case No. 08-10928-JKO |
| Debtors. | : | |
| | : | Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS OF TOUSA, INC., *et al.*, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | Adv. Pro. No. 08-01435 |
| | : | |
| CITICORP NORTH AMERICA, INC., *et al.*, | : | |
| Defendants. | : | |

## MOTION BY CITICORP NORTH AMERICA, INC., IN ITS CAPACITY AS ADMINISTRATIVE AGENT FOR THE REVOLVING CREDIT AGREEMENT, TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Defendant Citicorp North America, Inc. ("Citicorp" or the "Revolver Agent"), in

its capacity as Administrative Agent for the Revolver (defined below), respectfully

moves this Court, pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil

Procedure (made applicable to adversary proceedings by Rule 7012 of the Federal Rules

of Bankruptcy Procedure) to dismiss the complaint [D.E. #1] of the Official Committee

of Unsecured Creditors of TOUSA, Inc. (the "Committee"), or, in the alternative, for a

more definite statement.[1]  In support of the motion, the Revolver Agent respectfully submits the following.

## PRELIMINARY STATEMENT

Citicorp is the Administrative Agent under a revolving credit facility (the "Revolver") established for Debtor TOUSA, Inc. ("TOUSA") on March 9, 2006, and amended at various times, including October 2006, January 2007 and July 31, 2007.[2]  The Committee's complaint alleges that the July 31, 2007 Amendment to the Revolver -- which simply restated TOUSA's and its subsidiaries' pre-existing liabilities thereunder and reduced their overall commitment from $800 million to $700 million -- was executed when TOUSA's subsidiaries were insolvent, and that because the subsidiaries allegedly did not receive reasonably equivalent value at that time, the repayment obligations incurred and security granted by those subsidiaries under the Revolver are avoidable as fraudulent conveyances.

But because the July 2007 Amendment is exactly that -- an amendment, which reduced, not increased, the size of the credit line -- the complaint utterly fails to allege any new legal conveyance by TOUSA's subsidiaries that occurred under the Revolver on

---

[1]  A copy of the complaint is attached as Exhibit 1 to this Motion.  All references herein to exhibits are to the exhibits to this Motion.  Capitalized terms not otherwise defined in this Motion have the meanings ascribed to them in the complaint.

[2]  Citicorp is also the Administrative Agent of a $200 million first lien term loan to Debtors consummated on July 31, 2007.  Compl. ¶ 31(ii).  This motion to dismiss is brought solely in Citicorp's capacity as agent for the Revolver.

July 31, 2007, the alleged date of their insolvencies. The law is clear that amending terms ancillary to pre-existing transfers and obligations does not reset their transfer dates. Only new transfers and obligations are relevant.

As discussed below, the Revolver was created in March 2006 and the subsidiaries' repayment obligations and lien transfers arose well before the July 2007 Amendment. Thus, while the complaint alleges TOUSA's subsidiaries executed a Second Amended and Restated Revolving Credit Agreement on July 31, 2007 (Compl. ¶ 31(i)), it fails to allege any new transfers occurred under the Revolver at that time or thereafter that are avoidable. In fact, if anything, the Complaint alleges just the opposite -- the subsidiaries' obligations were ***reduced***. Accordingly, the complaint fails to state a claim and should be dismissed as to the Revolver.

Even if the Court were to overlook this fatal defect and refrain from dismissing the complaint as to the Revolver, the Committee should be required, pursuant to Rule 12(e), to provide a more definite statement as to the July 31, 2007 Revolver conveyances that it is challenging. The complaint's vague and conclusory allegations seeking to avoid unspecified "secured debt obligations" incurred "on or about July 31, 2007" provide no guidance. Compl. ¶ 1. Such inadequate pleading is particularly inexcusable given the expedited schedule in place for this case and the fact that the Committee has spent over $2 million since February 2008 supposedly investigating its claims.

## BACKGROUND[3]

The principal debtor in this proceeding, TOUSA, Inc., was and is a homebuilder with operations in Florida, Texas, the Mid-Atlantic States and the West.  TOUSA and its subsidiaries filed for bankruptcy protection in this Court on January 29, 2008.  TOUSA and its subsidiaries are borrowers on three credit facilities pertinent to this case:

- the Revolver, a $700 million credit facility originally established in March 2006 and amended at various times, including October 2006, January 2007 and July 31, 2007, with Citicorp as Administrative Agent.  Compl. ¶ 31(i). The actual lenders are named as Doe defendants.  Compl. ¶ 12.

- a $200 million First Lien Term Credit Agreement entered into July 31, 2007, for which Citicorp is Administrative Agent.  Compl. ¶ 31(ii). Again, the lenders are named in the complaint as Does.  Compl. ¶ 12.

- a $300 million Second Lien Term Credit Agreement also entered into July 31, 2007, for which Wells Fargo is Administrative Agent.  Compl. ¶ 31(iii).

No longer operative, but pertinent to the background of this case, is a $675 million credit facility entered into by a joint venture (the "Transeastern JV") between Debtor TOUSA Homes LP ("Homes LP"), a subsidiary of TOUSA, and Falcone/Ritchie LLC.  Compl. ¶¶ 2, 18.

---

[3]    The statements in this Background section are taken from the complaint and the key documents referenced therein.  Citicorp does not concede the accuracy of any of the complaint's allegations.

### A.    The 2005 Transeastern Acquisition

On June 6, 2005, Homes LP and Falcone/Ritchie LLC formed the Transeastern JV to acquire substantially all of the homebuilding assets of Transeastern Properties, Inc. Compl. ¶¶ 2, 18.  To fund that acquisition, the Transeastern JV borrowed $675 million from the Transeastern lenders (the "Transeastern Debt").  Compl. ¶¶ 2, 16, 19-20. TOUSA and Homes LP issued completion and carve-out guaranties to the Transeastern lenders (the "Transeastern Guaranties").  Compl. ¶¶ 2, 20.  The complaint alleges that TOUSA's other subsidiaries were not guarantors and thus not exposed to direct liability on the Transeastern Debt.  Compl. ¶¶ 2, 21.

### B.    The March 2006 Revolver

The complaint acknowledges that the July 2007 Amendment was an amendment to an existing credit facility.  Compl. ¶ 31.  This credit facility originated on March 9, 2006, when TOUSA (under its former name Technical Olympic USA, Inc.) entered into an $800 million Revolver with Citicorp as Administrative Agent for the lenders.[4]  See Ex.

---

[4]    The terms of the July 2007 Amendment, which is specifically referred to in the complaint (Compl. ¶ 31), clearly may be considered on this motion to dismiss.  See Lockwood v. Beasley, 211 Fed. Appx. 873, 877 (11th Cir. 2006); La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (court may consider "documents central to or referenced in the complaint").  A document "is central to the plaintiff's case" when "the plaintiff would have to offer the document to prove his case."  Id. (citing Fin. Sec. Assurance, Inc. v. Stephens, Inc., 450 F.3d 1257, 1264 (11th Cir. 2006)).  This is surely the case with a loan agreement whose obligations plaintiffs seek to avoid.  See Burns v. Rice, 39 F. Supp. 2d 1350, 1353 n.2 (M.D. Fla. 1998) (a document may be considered on a motion to dismiss when "the theories of Plaintiff's

(Cont'd on following page)

2.  The Revolver replaced another revolving credit agreement executed in 2004 with a maximum principal amount of $600 million.  Under the Revolver, TOUSA was entitled to make draws of up to $800 million, provided that certain conditions were met at the time of a draw.  Id. § 3.2.  The Revolver provided that the credit available thereunder was to be used to repay amounts due under the 2004 Revolver, to provide "working capital from time to time and for other general corporate purposes."  Id. § 4.12.  At the time of the March 2006 Revolver, thirty-one TOUSA subsidiaries executed Guaranties by which they became joint and several payment guarantors of the Revolver.  See Ex. 3.  Since March 2006, the Revolver has been used by the Debtors substantially to obtain letters of credit and fund their operations and working capital needs.

C.    **The Transeastern Litigation**

After the Transeastern JV proved unsuccessful (Compl. ¶ 3), the Transeastern lenders sent to TOUSA and Homes LP demands under their Transeastern Guaranties. Compl. ¶¶ 19 n. 3, 22.  Then, in November 2006, the administrative agent for the Transeastern Debt brought suit against TOUSA and Homes LP under those Transeastern Guaranties.  Compl. ¶¶ 2-3, 22.

---

(Cont'd from preceding page)

Amended Complaint rely on the terms of" the document).  Similarly, the March 2006 Revolver and the other predecessor loan agreements to the July 2007 Amendment may also be considered "notwithstanding that plaintiff's reference in its complaint is to the amendment to the . . . agreement rather than to the original itself." Venezia Amos, LLC v. Favret, No. 07-0146, 2008 WL 410163, *8 n.29 (N.D. Fla. Feb. 12, 2008).

**D.** **The October 2006 Amendment**

In October 2006, as a result of the occurrence of a material adverse change at Homes LP under the Revolver, TOUSA was no longer able to satisfy the conditions precedent to its ability to continue to draw on the Revolver. Ex. 4 p. 1. Accordingly, on October 23, 2006, the Revolver was amended (the "October 2006 Amendment"). Id. That October 2006 Amendment specifically acknowledged that its terms were merely to "amend the March 2006 Credit Agreement in certain respects." Id. The Amendment waived the condition that was preventing further draws, provided for the continued availability of funds under the Revolver, and obligated TOUSA and its subsidiaries to pledge as collateral all or substantially all of their assets as security for the Revolver. Id. p. 1, 3, 6-8.

**E.** **The January 2007 Amendment**

On January 30, 2007, the Revolver was again amended (the "January 2007 Amendment"). Again, the agreement specifically provided that its terms were merely "to amend and restate the March 2006 Credit Agreement." Ex. 5 p. 1. In consideration for loosening certain financial covenants, the January 2007 Amendment made TOUSA's subsidiaries, which were already (and continued to be) guarantors of the Revolver, co-borrowers on the Revolver "liable for all amounts due to the Administrative Agent and/or any Lender from any Borrower under this Agreement, regardless of which Borrower actually receives Loans." Ex. 5 § 10.20 pp. 108-11. In exchange, each subsidiary obtained the express right to draw on the Revolver. Id. p. 1.

### F.    The Transeastern Settlement

The complaint alleges that on July 31, 2007, TOUSA and Homes LP settled the

Transeastern litigation for approximately $422 million in cash plus stock and warrants

(the "Transeastern Settlement").  Compl. ¶¶ 3, 4, 25, 27, 29-33.  The Committee's

complaint defines July 31, 2007 as the "Transfer Date."  Compl. ¶ 30.

### G.    The July 2007 Financing

The complaint alleges that, as part of the Transeastern Settlement, "on or about

July 31, 2007," TOUSA, Homes LP and certain of their subsidiaries[5] entered into

approximately $800 million of secured credit facilities with the "New Lenders."[6]  Compl.

---

[5]    The Conveying Subsidiaries constitute all of the Debtors except for TOUSA and Homes LP.  The Conveying Subsidiaries are defined in the complaint as Engle Homes Commercial Construction, LLC; Engle Homes Delaware, Inc.; Engle Homes Residential Construction, L.L.C.; Engle Sierra Verde P4, LLC; Engle Sierra Verde P5, LLC; Engle/Gilligan LLC; Engle/James LLC; LB/TE #1, LLC; Lorton South Condominium, LLC; McKay Landing LLC; Newmark Homes Business Trust; Newmark Homes Purchasing, L.P.; Newmark Homes, L.L.C.; Newmark Homes, L.P.; Preferred Builders Realty, Inc.; Reflection Key, LLC; Silverlake Interests, L.L.C.; TOI, LLC; TOUSA Associates Services Company; TOUSA Delaware, Inc.; TOUSA Funding, LLC; TOUSA Homes Arizona, LLC; TOUSA Homes Colorado, LLC; TOUSA Homes Florida, L.P.; TOUSA Homes Investment #1, Inc.; TOUSA Homes Investment #2, Inc.; TOUSA Homes Investment #2, LLC; TOUSA Homes Mid-Atlantic Holding, LLC; TOUSA Homes Mid-Atlantic, LLC; TOUSA Homes Nevada, LLC; TOUSA Homes, Inc.; TOUSA Investment #2, Inc.; TOUSA Mid-Atlantic Investment, LLC; TOUSA Realty, Inc.; TOUSA, LLC; and TOUSA/West Holdings, Inc.  Compl. ¶ 9.

[6]    The complaint defines "New Lenders" as Citicorp, Wells Fargo Bank, N.A., the successor administrative agent under the Second Lien Term Loan, and "Doe New Lenders Nos. 1-100," i.e., the original lenders under the New Loans and signatories thereunder, their successors, assigns and participants.  Compl. ¶¶ 10-12.

¶¶ 3, 31.  Those $800 million of loans, the complaint alleges, consisted of the July 2007

Revolver Amendment (on which approximately $300 million had been drawn or reserved

for outstanding letters of credit before July 31), a $200 million first lien term loan and a

$300 million second lien term loan.[7]  Compl. ¶ 31.  The complaint alleges Homes LP

used the $800 million in proceeds of those credit facilities "among other things" to settle

the Transeastern litigation.  Compl. ¶¶ 3, 31.  Obviously, as the complaint elsewhere

alleges that only $422 million was required to settle that litigation (Compl. ¶¶ 4, 33), the

complaint cannot be read as alleging that the entire $800 million was used for that

settlement.

The July 2007 Amendment expressly formulated itself as an amendment of the

existing Revolver, providing that it "amend[s] and restate[s] the January 2007 Credit

Agreement."  Ex. 6 p. 1.  The July 2007 Amendment modified the Revolver in the

following material respects.  First, it *decreased* the credit available under the Revolver

from $800 million to $700 million.  Id.  Second, the Revolver was amended to permit

TOUSA and its subsidiaries to enter into the first and second lien term loans.  Id.  The

only additional security pledged in the July 2007 Amendment were the assets of the

Transeastern JV, which became extra collateral for what was already a fully secured debt.

---

[7]    The complaint alleges that as of the Petition Date, approximately $316.5 million was
outstanding on the Revolver, approximately $199 million was outstanding on the first
lien term loan, and approximately $317 million was outstanding on the second lien
term loan.  Compl. ¶ 31 ns. 8-11.

Ex. 6 p. 9. This security was introduced in the July 2007 Amendment, and not sooner, because TOUSA only acquired the Transeastern JV's assets on July 31, 2007, when it entered into the term loans. <u>See</u> Ex. 7 p. 1-2, § 4.12.

### H.    The Fraudulent Conveyance <u>Claim Against The Revolver</u>

The complaint alleges that on July 31, 2007, TOUSA's subsidiaries incurred "secured debt obligations in an amount potentially in excess of $800 million" for which they did not receive reasonable equivalent value as those funds were used to settle the Transeastern litigation for which the subsidiaries had no direct liability.[8] Compl. ¶ 33. It alleges that those subsidiaries were either insolvent or rendered insolvent on July 31, 2007. Compl. ¶ 5. These $800 million in loans are misleadingly and collectively defined in the complaint as the "New Lender Claim and Lien Transfers." Compl. ¶ 4. It is these "New Lender Claim and Lien Transfers" that each count of the complaint asserts are fraudulent conveyances under the Bankruptcy Code, Florida law and New York law. Compl. ¶¶ 41, 47, 53, 59, 65, 71.

---

[8]    Further demonstrating the problem with the complaint's lump-sum pleading, it alleges that "the New Credit Agreements [defined to include the Revolver and the two term loans (Compl. ¶ 31)] expressly required that proceeds from the New Loans [defined to include the Revolver and term loans (<u>id.</u>)] would be used to satisfy the Transeastern Obligations." Compl. ¶ 33. No such requirement can be found in the July 2007 Amendment or any other agreement under the Revolver.

**ARGUMENT**

While the complaint seeks to avoid the subsidiaries' obligations allegedly incurred in connection with the Revolver on July 31, 2007, the complaint fails to identify any new obligations incurred at that time that are avoidable.  Rather, the July 2007 Amendment simply restated the subsidiaries' pre-existing liabilities and reduced their overall commitment from $800 million to $700 million.[9]  Because the complaint alleges insolvency only as of July 31, 2007 (Compl. ¶ 5), and because it alleges no new conveyance with regard to the Revolver on that date, it fails to state a claim that the July 2007 Amendment constituted a fraudulent conveyance.  At a minimum, the Court should

---

[9]   While a court, in considering a motion to dismiss brought under Rule 12(b)(6), must view the allegations of the complaint in the light most favorable to the plaintiffs, "it is clear that the [] judge does not have to accept each and every allegation in the complaint as true in considering its sufficiency."  5B Wright & Miller, Federal Practice and Procedure § 1357; see Berry v. Coleman, 172 Fed. Appx. 929, 932 (11th Cir. 2006) ("On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true.'"); see also Gersten v. Rundle, 833 F. Supp. 906, 910 (S.D. Fla. 1993) (noting exceptions to the general rule that allegations in the complaint are accepted as true "such as when the facts alleged are internally inconsistent or when they run counter to facts of which the Court can take judicial notice.  Conclusory allegations and unwarranted deductions of fact also are not accepted as true.") (internal citations omitted); Pedraza v. Coca-Cola Co., 456 F. Supp. 2d 1262, 1269 (N.D. Ga. 2006) ("conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.") (quoting Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).

order a more definite statement and require the Committee to allege each conveyance under the Revolver -- if any -- that it seeks to avoid.

## I.

### THE COMPLAINT SHOULD BE DISMISSED AS IT FAILS ADEQUATELY TO PLEAD ANY TRANSFERS TO BE AVOIDED ON THE REVOLVER

To plead a claim for fraudulent conveyance under the Bankruptcy Code, a complaint must show that a debtor "received less than reasonably equivalent value in exchange for such transfer or obligations," and "(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or] (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. . . ."  11 U.S.C. § 548(a)(1)(B)(i), (a)(1)(B)(ii)(I)-(III).  State law is similar. [10]

_____

[10]    Except for providing for longer statutes of limitations, the elements of New York and Florida fraudulent conveyance claims are the same as those in Section 548, and courts generally apply federal bankruptcy law principles in analyzing those state law claims. See, e.g., Goldberg v. Countrywide Home Loans, Inc. (In re Seaway Int'l Trans., Inc.), 341 B.R. 333, 334 (Bankr. S.D. Fla. 2006) (apart from limitations periods, Florida "state fraudulent transfer provisions are otherwise identical to those found in the bankruptcy code"); Official Comm. of Unsecured Creditors v. State (In re Tower Envtl., Inc.), 260 B.R. 213, 222 (Bankr. M.D. Fla. 1998) (apart from different limitations periods, Florida's constructive fraudulent conveyance statutes analogous "in form and substance" to 11 U.S.C. § 548(a)(2)) (citation omitted); Ames Dep't

(Cont'd on following page)

Although a fraudulent conveyance claim predicated on constructive fraud rather than actual fraud need not be pleaded with the particularity required by Rule 9(b), notice pleading still requires a level of "detail as to the alleged transfers." Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.), 339 B.R. 570, 575 (Bankr. D. Del. 2006). Specifically, plaintiffs asserting claims under Section 548 must plead "the dates and amounts of each alleged transfer, and the instruments by which the conveyances were made." Perkins v. Crown Fin., LLC, (In re Int'l Mgmt. Assocs. LLC), No. 06-6421, 2007 Bankr. LEXIS 1566, *7 (Bankr. N.D. Ga. Mar. 6, 2007); cf. Cohen v. Morgan Schiff & Co. (In re Friedman's Inc.), 385 B.R. 381, 467 (S.D. Ga. 2008) (collecting cases under Section 544 and 548 that "have held that a fraudulent transfer claim is sufficiently pled when it identifies the date and amount of the transfer and the transferor and transferee").

Here, the complaint broadly characterizes the Revolver transfers and obligations it seeks to avoid into three categories:

1.  The subsidiaries' guaranties of the Revolver. Compl. ¶ 33.

2.  The subsidiaries repayment obligations under the Revolver. Compl. ¶ 33.

---

(Cont'd from preceding page)

Stores, Inc. v. Wertheim Schroder & Co., Inc. (In re Ames Dep't Stores, Inc.), 161 B.R. 887, 889 n. 1 (Bankr. S.D.N.Y. 1993) ("[t]his Court need not discuss the components of a fraudulent conveyance claim under New York state law, the elements are almost identical to that of 11 U.S.C. § 548(a)(2)"). As a result, this brief focuses on federal bankruptcy law precedent addressing Section 548.

3.      The liens on cash assets and real property that the subsidiaries
granted as security for the Revolver.  Compl. ¶ 32.

However, as addressed below, the complaint fails to allege that any of these conveyances

originally occurred on July 31, 2007, the alleged date of insolvency.

## A.      The Guaranty Obligations

The complaint challenges as fraudulent any guaranties of the Revolver that the

subsidiaries gave on July 31, 2007 (Compl. ¶ 33), but it fails to allege that the

subsidiaries first became guarantors at that time.  Instead, substantially all of the

subsidiaries' guaranties were issued in March 2006.[11]  See Ex. 3 (identifying the

subsidiaries); Ex. 2 § 6.13 ("the Borrower promptly shall, and shall cause each of its

Restricted Subsidiaries promptly to . . . become a party to the Guaranty").  The amended

guaranties that the subsidiaries executed on July 31, 2007 (Compl. ¶ 119) merely restated

their pre-existing guarantee obligations and made clear that the original guarantees

continued to exist and remained in force.  Ex. 8 p. 1.

As the complaint does not allege that the subsidiaries conveyed any new

guaranties of the Revolver on July 31, 2007, it fails to state a claim based on the

guaranties.

-----

[11]    The March Guaranty was executed on behalf of the signatory subsidiaries as well as
any newly created or additional subsidiaries "that become[] a party hereto," Ex. 3
p. 1, by operation of a provision in the Revolver for causing additional subsidiaries to
become party to the guaranty.  See Ex. 2 § 6.13 p. 57.

B.     **The Repayment Obligations**

Next, the complaint challenges as fraudulent the subsidiaries' repayment

obligations under the Revolver.  The complaint alleges that the subsidiaries were co-

borrowers and guarantors of the Revolver at the time of the July 2007 Amendment,

Compl. ¶ 31, but fails to allege that they first became co-borrowers and guarantors at that

time.

Whether the subsidiaries' repayment obligations arose when the subsidiaries

became guarantors of the Revolver in March 2006 or when they additionally became co-

borrowers in January 2007, the complaint fails to allege that they incurred any new

repayment obligations on the alleged insolvency date of July 31, 2007.  As is plain from

its face, the July 2007 Amendment did not subject the subsidiaries to any new repayment

obligation, but merely restated their pre-existing obligations in identical language:

> [A]ll Loans, Letters of Credit or other extensions of credit outstanding
> under the First Amended and Restated Credit Agreement . . . shall
> continue as Loans, Letters of Credit or other extensions of credit, as
> applicable, under the Second Amended and Restated Revolving Credit
> Agreement;
>
> *     *     *
>
> [A]ll amounts owing by the Borrowers under the First Amended and
> Restated Credit Agreement . . . shall continue to be due and owing on
> such Loans, Commitments and Letters of Credit under the Second
> Amended and Restated Revolving Credit Agreement;
>
> *     *     *
>
> The rights and obligations of the parties to the First Amended and
> Restated Credit Agreement with respect to the period prior to the
> Amendment Effective Date shall not be affected by such amendments
> and restatement.

Ex. 11 p. 1-2.

It is legally insignificant that the July 2007 Amendment restated the subsidiaries' pre-existing repayment obligations. "The definition of transfer focuses on what the debtor relinquished[,] not on the formalities of the documentation." Rosen v. MIF Realty, L.P. (In re Vuckovic), 211 B.R. 1002, 1005 (Bankr. M.D. Fla. 1997). Such formalities are always subject to amendment; the "moment of importance [is] the actual time at which the estate is diminished." 5 Collier on Bankruptcy ¶ 548.02[2] at 548-13 (15th ed. 1998). When a loan agreement modifies an existing instrument, it constitutes a transfer only "to the extent of the increase in the principal indebtedness." Venice Western Motel, Ltd. v. Venice Motor Inn, Ltd. (In re Venice Western Motel, Ltd.), 67 B.R. 777, 780 (Bankr. M.D. Fla. 1986). Here, of course, the July 2007 Amendment actually *decreased* the potential Revolver indebtedness, and the subsidiaries' potential liability thereunder, from $800 million to $700 million. Ex. 6 p. 1.

**C.      Liens on Assets and Real Property**

Lastly, the complaint challenges any liens the TOUSA subsidiaries conveyed to secure the Revolver on July 31, 2007. Compl. ¶ 4. As with the other allegations of fraudulent conveyance, the complaint fails to allege that any such transfers under the Revolver were in fact made on July 31. For example, although the complaint alleges that the subsidiaries pledged their collateral to secure the Revolver (Compl. ¶ 32), it does not allege that any such security was conveyed on July 31.

Rather, it was in connection with the October 2006 Amendment that TOUSA's subsidiaries agreed to grant the lenders security interests in all or substantially all of their

assets.  The January 2007 and July 2007 Amendments simply reaffirmed and restated

these pre-existing security interests.  The July 2007 Amendment documents provide that

"[t]he security interest created pursuant to the Original Security Agreement [dated

January 30, 2007] is and shall continue to be in full force and effect as amended and

restated by this Agreement and is hereby ratified and confirmed in all respects."  Ex. 9

§ 8.16; see also Ex. 10 § 8.16.  And the January 2007 Security Agreement had simply

restated the grant of security found in the October 2006 Security Agreement.  Ex. 5 p. 28.

     Thus, the vast majority of the security interests pledged in July 2007 were merely

continuations of interests already pledged in the October 2006 and January 2007

Amendments.  The complaint makes no attempt to distinguish which is which, fails to

challenge any pre–July 31, 2007 liens, and fails to allege that any new security interests

granted under the Revolver on July 31, 2007 are avoidable.  It therefore fails to state a

claim based on the lien transfers.

**D.**    **The Insufficiency of the
       Committee's Omnibus Allegations**

     The complaint seeks to avoid "[t]he New Lender Claim and Lien Transfers"

(Compl. ¶¶ 41, 47, 53, 59, 65, 71), which it defines only as "secured debt obligations in

an amount potentially in excess of $800 million" incurred on July 31, 2007.  Compl. ¶ 4.

This broad allegation thus lumps together the new first and second term loans created on

July 31, 2007 with the Revolver which was merely amended at that time.  Compl. ¶ 4.

Courts have routinely recognized that such generalized pleading warrants dismissal of

fraudulent conveyance claims.

In <u>Cohen</u>, the court found the complaint "deficient" because it "simply lumps together unidentified payments . . . totaling approximately $4.14 million," adding that "[t]he Court finds it hard to believe that the plaintiff can produce a figure of $4.14 million of fraudulent transfers yet does not have any means of providing specifics as to the dates and amounts of each of those transfers."  385 B.R. at 467.  In <u>Giuliano</u>, the court found the complaint "not sufficient to support the Trustee's allegations of fraudulent transfer" when it contained "a summary only" and "d[id] not identify specific amounts . . . paid by the Debtors."  339 B.R. at 575.  Similarly, in <u>TWA Inc. Post Comfirmation Estate</u> v. <u>Marsh USA Inc</u>. (<u>In re TWA Inc. Post Confirmation Estate</u>), 305 B.R. 228, 233 (Bankr. D. Del. 2004), the court found a complaint "deficient" when it "only provide[d] one aggregated payment amount" instead of providing "an identification of each alleged . . . transfer."[12]

The Committee was required to detail in its complaint, by name, date, transferor and transferee, the transfers it seeks to avoid with respect to the Revolver.  Its failure to do so, leaving the Revolver Agent with nothing to respond to as to the Revolver but

---

[12]   Any assertion by the Committee that it needs discovery to identify any transfers it seeks to challenge must be rejected.  The Committee was appointed on February 13, 2008 (Compl. ¶ 9) and was granted standing to bring the present adversary proceeding on May 28, 2008.  <u>See</u> 05/28/08 Order [D.E. # 1092].  Further, counsel for the Committee has, to date, filed requests for legal fees exceeding $2 million to investigate these claims.  Indeed, at the invitation of the Debtors, on April 3 and April 14, 2008, the Committee served broad document demands on the Debtors resulting in the production of tens of thousands of documents.

generalized allegations of avoidable "unsecured debt obligations," is insufficient as a matter of law.  See Friedman v. Ginsburg (In re David Jones Builder, Inc.), 129 B.R. 682, 689 (Bankr. S.D. Fla. 1991) ("Insolvency must be established on the dates of each transfer or continuously for the periods of the transfers"); Kepler v. Weis (In re Weis), 92 B.R. 816, 819 n.5 (Bankr. W.D. Wis. 1988) (requiring the trustee to "establish the debtor's insolvency on the date the transfer which he seeks to avoid was made").

The Revolver Agent recognizes that latitude in pleading is often given to a trustee or committee with limited knowledge of the Debtors' books and records.  But here, the Court should consider that counsel to the Committee has incurred millions of dollars in fees in connection with the Chapter 11 case, has incurred over $2 million in fees investigating claims in its complaint, has been engaged in document discovery with the Debtors since April 2008 and, well prior to the commencement of the Chapter 11 case, its current counsel represented an ad hoc group of noteholders examining potential claims.  Thus, the Committee and its counsel have had plenty of time and the resources to identify the appropriate transfers at issue, if any.  Having failed to do so, its claims pertaining to the Revolver should be dismissed.

## II.

### IF THE COMPLAINT IS NOT DISMISSED, THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  In the event

complaint is not dismissed as to the Revolver, the Revolver Agent respectfully requests the Court to order a more definite statement pursuant to Rule 12(e) because the complaint is "so vague or ambiguous that [the Revolver Agent] cannot respond, even with a simple denial, in good faith or without prejudice to [it]self."  5 Wright & Miller, Federal Practice And Procedure § 1376.

The Committee's complaint is nothing but a variation of the "shotgun pleading" tactic denounced by the Eleventh Circuit in Anderson v. District Bd. of Trustees of Cent. Fla. Community College, 77 F.3d 364, 366-67 (11th Cir. 1996).  In Anderson, the plaintiff bundled all of his factual allegations in all of his claims, no matter how pertinent. Here (in addition to that), the Committee bundles hundreds of individual conveyances under three separate loan facilities into a single vague -- and inaccurate -- allegation aggregating $800 million of claims into a collective category of "New Lender Claim and Lien Transfers" alleged to have occurred on July 31, 2007.  Compl. ¶ 4.  Nowhere does the Committee plead "the dates and amounts of each alleged transfer and the instruments by which the conveyances were made" (since doing so would reveal the actual conveyance dates).  Perkins, 2007 Bankr. LEXIS 1566 at *7.  The task of responding to such allegations goes beyond "cumbersome," Anderson, 77 F.3d at 366; it is impossible. the Revolver Agent cannot admit or deny conveyances that are never identified or described.

Particularly given the expedited schedule for this case, the considerable sums at stake, and the need to focus discovery and expert analysis, the Committee should be directed to plead -- by type, amount, transferor and transferee -- the July 31, 2007

transfers under the Revolver, if any, that it challenges, in such a manner that the Revolver Agent "will be able to discern what the plaintiff is claiming and to frame a responsive pleading." Id. at 366. As the Eleventh Circuit stated in Anderson, "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Id. at 367.

## CONCLUSION

For the above-stated reasons, the Revolver Agent respectfully requests that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismiss the complaint as to the Revolver or, in the alternative, order a more definite statement pursuant to Rule 12(e).

**SMITH HULSEY & BUSEY**

By: /s/ Allan E. Wulbrn
    Stephen D. Busey (117790)
    Allan E. Wulbern (175511)
    225 Water Street, Suite 1800
    Jacksonville, Florida 32202
    Telephone:  (904) 359-7700
    Facsimile:   (904) 359-7708

**CHADBOURNE & PARKE LLP**
    Joseph H. Smolinsky (Admitted Pro Hace Vice)
    Thomas J. Hall (Admitted Pro Hace Vice)
    Thomas J. McCormack (Admitted Pro Hace Vice)
    30 Rockefeller Plaza
    New York, New York 10112
    Telephone:  (212) 408-5100
    Facsimile:   (212) 541-5369

    *Attorneys for Citicorp North America, Inc., in its*
    *Capacity as Administrative Agent for the Revolver*

August 13, 2008

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 2090-1(A)</u>**

I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

<u>/s/ Allan E. Wulbern</u>
Attorney