# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

|  |  |
|---|---|
| In re:<br>TOUSA, INC., *et al.*,<br><br>Debtors. | :    Chapter 11 Cases<br>:<br>:    Case No. 08-10928-JKO<br>:<br>:    Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS OF TOUSA, INC., *et al.*,<br><br>         Plaintiff,<br><br>    v.<br><br>CITICORP NORTH AMERICA, INC., *et al.*,<br><br>         Defendants. | :<br>:<br>:    Adv. Pro. No. 08-01435<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## SENIOR TRANSEASTERN LENDERS' MOTION TO DISMISS ADVERSARY
## COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

Dated: September 3, 2008

{FT517556;1}

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I.    BACKGROUND ........................................................................................................... 3

   A.  Transeastern Transaction and Settlement ............................................................. 3

   B.  Claims Against the Senior Transeastern Lenders ................................................. 5

II.   ARGUMENT ................................................................................................................ 7

   A.  Motion To Dismiss Standard ................................................................................ 7

   B.  Fraudulent Transfer Statutes ................................................................................ 8

   C.  The Complaint Fails To Plead That the Conveying
       Subsidiaries Were Transferors ............................................................................. 9

   D.  The Complaint Does Not Allege That the Payment to the
       Senior Transeastern Lenders Was Property of the Conveying Subsidiaries ..................... 12

   E.  The Senior Transeastern Lenders Are Not Liable As
       Subsequent Transferees of an Incurred Obligation ............................................. 13

   F.  The Complaint Improperly Repeats Statutory Elements
       and Does Not Allege Facts To Satisfy Those Elements ..................................... 15

   G.  The Committee Should Not Be Permitted To Amend the Complaint ............... 16

     1.   The Committee Has Not – And Cannot – Plead a Transferor ...................... 16

     2.   Amendment Would Be Futile Because the Senior Transeastern
        Lenders Have a Right of Recoupment ......................................................... 18

CONCLUSION ..................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Ambrosia Coal & Constr. Co. v. Pages Morales,*
  482 F.3d 1309 (11th Cir. 2007) ................................................................. 7

*Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*
  *(In re Ames Dep't Stores, Inc.),* 161 B.R. 87 (Bankr. S.D.N.Y. 1993)..................... 8

*Atlanta Shipping Corp. v. Chemical Bank,*
  818 F.2d 240 (2d Cir. 1987) .................................................................. 18

*Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.),*
  No. 05-80625, 2006 WL 3663243 (S.D. Fla. Nov. 14, 2006) ......................... 9

*Bell Atlantic v. Twombly,*
  127 S. Ct. 1955 (U.S. 2007)..................................................................... 7

*C.H. Rider & Family v. Wyle (In re United Energy Corp.),*
  102 B.R. 757 (B.A.P. 9th Cir. 1989) ........................................................ 18

*Cohen v. Morgan Schiff & Co. (In re Friedman's Inc.),*
  385 B.R. 381 (S.D. Ga. 2008)................................................................... 9

*Continental Title Co. v. The Peoples Gas Light & Coke Co.,*
  No. 96 C 3257, 1999 WL 753933 (N.D. Ill. Sept. 15, 1999)......................... 10

*Court Appointed Receiver for Lancer Mgmt. Group LLC v. 169838 CANADA, Inc.,*
  No. 05-60235-CIV, 2008 WL 2262063 (S.D. Fla. May 30, 2008)............................. 9

*Dzikowski v. NASD Regulation, Inc.,*
  247 B.R. 867 (S.D. Fla. 2000) ................................................................ 12

*Edgewater Med. Ctr. v. Edgewater Prop. Co. (In re Edgewater Med. Ctr.),*
  373 B.R. 845 (Bankr. N.D. Ill. 2007) .................................................... 9, 10

*Enron Corp. v. Granite Constr. Co. (In re Enron Corp.),*
  No. 01-16034, 2006 WL 2400369 (Bankr. S.D.N.Y. May 11, 2006) ....................... 7

*Estes v. N&D Props. Inc. (In re N&D Props., Inc.),*
  799 F.2d 726 (11th Cir. 1986) ................................................................ 12

*Florida Power & Light Co. v. Allis Chalmers Corp.,*
  85 F.3d 1514 (11th Cir. 1996) ................................................................ 16

*General Elec. Capital v. Lease Resolution Corp.,*
  128 F.3d 1074 (7th Cir. 1997) .................................................................. 9

*Giuliano v. United States Nursing Corp. (In re Lexington Healthcare Group, Inc.),*
  339 B.R. 570 (Bankr. D. Del. 2006) ........................................................... 9

*Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),*
  327 B.R. 711 (Bankr. D. Del. 2005)...................................................... 9, 15

*GMC v. New A.C. Chevrolet, Inc.,*
  263 F.3d 296 (3d Cir. 2001) ..................................................................... 7

*Goldberg v. Chong,*
  No. 07-20931-CIV, 2007 WL 2028792 (S.D. Fla. July 11, 2007) ........................ 8

*Gulf Coast Produce, Inc. v. American Growers, Inc.,*
No. 07-80633-CIV, 2008 WL 660100 (S.D. Fla. Mar. 7, 2008) ................................................ 9

*Hall v. United Ins. Co.,*
367 F.3d 1255 (11th Cir. 2004) ................................................................................................ 16

*Halliburton & Assocs., Inc. v. Henderson,*
*Few & Co.,* 774 F.2d 441 (11th Cir. 1985) ............................................................................... 16

*Harris v. Ivax Corp.,*
182 F.3d 799 (11th Cir. 1999) .................................................................................................... 8

*Holford v. Powers (Matter of Holford),*
896 F.2d 176 (5th Cir. 1990) .................................................................................................... 18

*Horsley v. Feldt,*
304 F.3d 1125 (11th Cir. 2002) .................................................................................................. 8

*In re Astropower Liquidating Trust,*
335 B.R. 309 (Bankr. D. Del. 2005) ........................................................................................... 9

**In re Graboyes**,
223 F. App'x 112 (3d Cir. 2007) ............................................................................................... 18

*In re Oakwood Homes Corp.,*
325 B.R. 696 (Bankr. D. Del. 2005) ........................................................................................... 9

*Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n*
*(In re Integrated Res., Inc.),* 157 B.R. 66 (Bankr. S.D.N.Y. 1993) .......................................... 18

*Kapila v. WLN Family Ltd. P'Ship (In re Leneve),*
341 B.R. 53 (Bankr. S.D. Fla. 2006) ................................................................................... 8, 18

*Kline v. Blue Shield of Pa.,*
556 A.2d 1365 (Pa. Super. Ct. 1989) ....................................................................................... 18

*Levitt v. Riddell Sports (In re MacGregor Sporting Goods),*
199 B.R. 502 (Bankr. D.N.J. 1995) ............................................................................................ 9

*Marshall County Bd. of Educ. v. Marshall County Gas Dist.,*
992 F.2d 1171 (11th Cir. 1993) .................................................................................................. 7

*Miller v. McCown De Leeuw & Co. (In re The Brown Schools),*
386 B.R. 37 (Bankr. D. Del. 2008) ............................................................................................. 9

*Miner v. Bay Bank & Trust Co. (In re Miner),*
185 B.R. 362 (N.D. Fla. 1995) .............................................................................................. 9, 12

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.),*
813 F.2d 1177 (11th Cir. 1987) ................................................................................................ 12

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.),*
325 B.R. 696 (Bankr. D. Del. 2005) ........................................................................................... 9

*Papasan v. Allain,*
478 U.S. 265 (1986) .................................................................................................................... 7

*Pardo v. Avanti Corporate Health Sys., Inc. (In re APF Co.),*
274 B.R. 634 (Bankr. D. Del. 2001) .................................................................................... 7, 15

*Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.),*
    287 B.R. 98 (Bankr. S.D.N.Y. 2002) ................................................................................. 10

*Powell v. United States,*
    945 F.2d 374 (11th Cir. 1991) ........................................................................................... 7

*Profilet v. Cambridge Fin. Corp.,*
    231 B.R. 373 (S.D. Fla. 1999) ........................................................................................... 9

*Silverman v. Paul's Landmark, Inc. (In re Nirvana Rests., Inc.),*
    337 B.R. 495 (Bankr. S.D.N.Y. 2006) ................................................................................ 8

*Uiterwyk Corp. v. Maher Terminals, Inc. (In re Uiterwyk Corp.),*
    75 B.R. 33 (Bankr. M.D. Fla. 1987) ................................................................................ 18

*Victor v. Riklis,*
    No. 91 Civ. 2897, 1992 WL 122911 (S.D.N.Y. May 15, 1992) ......................................... 9

**Statutes**
11 U.S.C. § 544 .................................................................................................................... 8

11 U.S.C. § 548 ........................................................................................................... passim

11 U.S.C. § 550 ............................................................................................................ 13, 14

Florida Statute ¶ 726.105 ..................................................................................................... 8

Florida Statute ¶ 726.106 ..................................................................................................... 8

Florida Statute ¶ 726.108 ..................................................................................................... 8

New York Debtor and Creditor Law ¶ 273 ........................................................................... 8

New York Debtor and Creditor Law ¶ 274 ........................................................................... 8

New York Debtor and Creditor Law ¶ 275 ........................................................................... 8

New York Debtor and Creditor Law ¶ 278 ........................................................................... 8

**Rules**
Federal Rule of Bankruptcy Procedure 7012 ........................................................................ 1

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 1, 7, 16, 19

Federal Rule of Civil Procedure 8 ......................................................................................... 9

Federal Rule of Civil Procedure 9(b) .................................................................................... 9

**Treatises**
5 Lawrence P. King, Collier on Bankruptcy (15th ed. 1984) ............................................... 18

Certain of the lenders on the $450,000,000 Credit Agreement dated as of August 1, 2005 (collectively, the "Senior Transeastern Lenders"),[1] by and through undersigned counsel and under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), hereby file their Motion to Dismiss (the "Motion") the Adversary Complaint To Avoid and Recover Fraudulent Transfers, for Damages and Other Relief (the "Complaint") and Memorandum of Law in support of their Motion and state as follows:

## PRELIMINARY STATEMENT

Plaintiffs bring this fraudulent transfer action despite affirmatively alleging that they *did not* make any transfer to the Senior Transeastern Lenders.  In Counts VII through XII of the Complaint, the Official Committee of Unsecured Creditors of TOUSA, Inc., *et al.*, (the "Committee") asserts fraudulent transfer claims against the Senior Transeastern Lenders in connection with TOUSA, Inc.'s ("TOUSA") $422.8 million payment to them on July 31, 2007. The Committee seeks to avoid and recover that payment to the Senior Transeastern Lenders. The Committee's claims are, however, fatally flawed because it has not sued on behalf of the

---

[1]    The Senior Transeastern Lenders, as named in the Complaint, are: 3V Capital Master Fund Ltd.; Atascosa Investments, LLC; Aurum CLO 2002-1 Ltd.; Bank of America, N.A.; Bear Stearns Investment Products Inc.; Burnet Partners, LLC; Centurion CDO 10, Ltd.; Centurion CDO 8, Limited; Centurion CDO 9, Ltd.; Centurion CDO II, Ltd.; Centurion CDO VI, Ltd.; Centurion CDO VII, Ltd.; Centurion CDO XI, Ltd.; Deutsche Bank Trust Company Americas; Distressed High Yield Trading Ops. Fund Ltd.; Eaton Vance Credit Opportunities Fund; Eaton Vance Floating-Rate Income Trust; Eaton Vance Grayson & Co.; Eaton Vance Limited Duration Income Fund; Eaton Vance Senior Debt Portfolio; Eaton Vance Senior Floating-Rate Trust; Eaton Vance Senior Income Trust; Eaton Vance VT Floating-Rate Income Fund; Farallon Capital Institutional Partners II, L.P.; Farallon Capital Institutional Partners III L.P.; Farallon Capital Institutional Partners L.P.; Farallon Capital Offshore Investors II, L.P.; Farallon Capital Offshore Investors, Inc.; Farallon Capital Partners L.P.; Flagship CLO III; Flagship CLO IV; Flagship CLO V; Gleneagles CLO Ltd.; Goldman Sachs Credit Partners, L.P.; Grand Central Asset Trust, CED Series; Grand Central Asset Trust, HLD Series; Grand Central Asset Trust, SOH Series; Hartford Mutual Funds, Inc., on behalf of The Hartford Floating Rate Fund by Hartford Investment Management Company, its Sub-Advisor; Highland CDO Opportunity Fund, Ltd.; Highland Credit Opportunities CDO Ltd.; Highland Floating Rate Advantage Fund; Highland Floating Rate LLC; Highland Legacy Limited; Highland Offshore Partners, L.P.; JPMorgan Chase Bank, N.A.; Jasper CLO, Ltd.; LL Blue Marlin Funding LLC; Liberty CLO, Ltd.; Loan Funding VII, LLC; Merrill Lynch Credit Products LLC; Ocean Bank; Quadrangle Master Funding Ltd.; Riversource Floating Rate Fund; Rockwall CDO, Ltd.; Sequils-Centurion V, Ltd.; Silver Oak Capital LLC; Stedman CBNA Loan Funding LLC; The CIT Group/Business Credit, Inc.; The Foothills Group, Inc.; Tinicum Partners, L.P.;Van Kampen Dynamic Credit Opportunities Fund; Van Kampen Senior Income Trust; and Van Kampen Senior Loan Fund.

{FT517556;1}

entity that – as the Committee itself alleges – actually made the transfer to the Senior Transeastern Lenders. The TOUSA-related entities on whose behalf the Committee acts in bringing these claims, defined by the Committee as the "Conveying Subsidiaries,"[2] expressly do not include TOUSA itself.[3] The Conveying Subsidiaries did not themselves make any transfer to the Senior Transeastern Lenders that could be avoided and did not have an interest in the property transferred to the Senior Transeastern Lenders. The Committee does not allege otherwise in the Complaint, nor could it. It follows that the Committee cannot recover from the Senior Transeastern Lenders as transferees on behalf of entities that did not transfer funds.

Indeed, although the Court granted the Committee standing and authority to prosecute avoidance actions on behalf of all of the Debtors – including the one that made the transfers at issue (TOUSA) – the Committee tactically determined to assert these claims on behalf of non-transferors precisely because the admitted transferring entity received reasonably equivalent value. That tactical determination is fatal to this action and cannot be overcome by the Committee's vague language and crafty use of the passive voice to obfuscate the statutorily required allegation that the plaintiff seeking to avoid and recover a transfer actually made that transfer.

Because there can be no claim against the Senior Transeastern Lenders for recovery of the $422.8 million payment, the Committee should not be permitted to replead Counts VII through XII. Any amendment would be futile. This is not a case where the Committee does not know the facts about the $422.8 million TOUSA paid to the Senior Transeastern Lenders.

---

[2]     The Committee engages in a definitional sleight of hand by defining the plaintiffs as the "Conveying Subsidiaries." Whatever the Committee may mean by such a definition, it does not mean that the so-called Conveying Subsidiaries conveyed anything to the Senior Transeastern Lenders. As discussed herein, no such conveyance is alleged in the Complaint because none occurred. For the convenience of the Court, this memorandum adopts the Committee's nomenclature and refers to the plaintiffs in the case as the Conveying Subsidiaries. All other capitalized terms not defined herein shall have the meaning given in the Complaint.

[3]     The Complaint lists the Conveying Subsidiaries in Paragraph 9; TOUSA is not included. (*See* Complaint ¶ 9.)

Rather, the Complaint makes it apparent (though not immediately so) that the Committee realized those facts do not support a claim against the Senior Transeastern Lenders and so it resorted to vagueness and obfuscation in pleading. Properly read from the Complaint, these facts preclude the Committee's claims against the Senior Transeastern Lenders. For these and other reasons, the Committee's claims against the Senior Transeastern Lenders are defective and Counts VII through XII should therefore be dismissed with prejudice.

## I.    BACKGROUND

### A.    Transeastern Transaction and Settlement

The Committee's claims against the Senior Transeastern Lenders relate to a payment made to the lenders on July 31, 2007 as part of a settlement of litigation against TOUSA and TOUSA Homes LP, another TOUSA affiliate not included among the Conveying Subsidiaries. The litigation that was settled concerned certain credit agreements (the "Transeastern Credit Agreements") and guaranties entered into with the Transeastern Lenders[4] in connection with financing a 2005 transaction.[5]    (See Complaint ¶¶ 3, 20.)    The Complaint describes the transaction as follows:  "TOUSA Homes LP ('Homes LP') and Falcone/Ritchie LLC formed TE/TOUSA LLC (the 'Transeastern JV') to acquire substantially all of the homebuilding assets of Transeastern Properties, Inc. (the 'Transeastern Acquisition')." (Complaint ¶ 2.) To finance the Transeastern Acquisition, TOUSA, Homes LP, and the Transeastern JV Subsidiaries,[6]

---

[4]    The Complaint defines the Transeastern Lenders in Paragraph 16 and note 2. (See Complaint ¶ 16 & n.2.) This definition includes the Senior Transeastern Lenders as well as the lenders with respect to certain other tranches of debt.

[5]    The Transeastern Credit Agreements made available to the Transeastern JV funding in an aggregate amount of $675,000,000 under three credit agreements, each with separate groups of lenders, and each dated August 1, 2005:  (a) a $450,000,000 Credit Agreement (the "Senior Credit Agreement"); (b) a $137,000,000 Senior Mezzanine Credit Agreement (the "Senior Mezzanine Credit Agreement"); and (c) an $87,500,000 Junior Mezzanine Credit Agreement.  (Complaint ¶ 19.)  The Senior Transeastern Lenders were the "Lenders" under the Senior Credit Agreement.

[6]    The "Transeastern JV Subsidiaries" were formed in connection with the Transeastern JV and are EH/Transeastern, LLC; TE/TOUSA Senior, LLC; TE/TOUSA Mezzanine LLC; and TE/TOUSA

entered into the Transeastern Credit Agreements. (Complaint ¶ 2.) TOUSA and Homes LP "both executed three unsecured completion guaranties and three unsecured carve-out guaranties (the six guaranties together are the 'TOUSA Guaranties') in respect of the Transeastern Credit Agreements." (Complaint ¶ 20.) TOUSA and Homes LP were the only Debtors that were liable as guarantors under the Transeastern Credit Agreements. (Complaint ¶ 2.)

The Transeastern JV experienced financial difficulties shortly after its formation. On October 31, 2006 and November 1, 2006, the administrative agent under the Transeastern Credit Agreements sent demand letters to TOUSA and Homes LP alleging potential defaults and events of default under those loan agreements, triggering TOUSA's and Homes LP's obligations under the TOUSA Guaranties, and demanding payment thereon. (Complaint ¶ 20.) In November 2006, the administrative agent under the Transeastern Credit Agreements, on the one hand, and TOUSA and Homes LP, on the other hand, sued one another in New York and Florida on the TOUSA Guaranties. (Complaint ¶¶ 3, 22.) The Complaint alleges that "[a]fter months of negotiations, the Debtors consummated a 'global settlement' of the litigation and of the remaining obligations among participants in the Transeastern JV (the 'Transeastern Settlement')." (Complaint ¶ 3.) On July 31, 2007, as part of the Transeastern Settlement, the Senior Transeastern Lenders received approximately $422.8 million as payment in full of all principal and interest outstanding under the Senior Credit Agreements. (*See* Complaint ¶¶ 4, 27, 33.)

Plaintiffs affirmatively allege that the funds paid to the Senior Transeastern Lenders as part of the Transeastern Settlement did not come from the Conveying Subsidiaries. The Complaint asserts instead that TOUSA or Homes LP (and not the Conveying Subsidiaries) made the transfer to the Senior Transeastern Lenders. The Complaint alleges as follows: "TOUSA

Mezzanine Two LLC. (Complaint ¶ 19 & n.4.) The borrowers under the $450,000,000 Senior Credit Agreement were EH/Transeastern, LLC and TE/TOUSA Senior, LLC. (Complaint ¶ 19.)

and Homes LLP [sic] used the proceeds of . . . [new] credit facilities, among other things, to satisfy the Transeastern Debt, and to incur certain other liabilities."[7] (Complaint ¶ 3.) The Complaint further alleges that "TOUSA . . . repa[id] a debt for which [the Conveying Subsidiaries] were not liable." (Complaint ¶ 1.) The Complaint does not allege that any of the Conveying Subsidiaries actually made any transfer to the Senior Transeastern Lenders or to any other party in connection with the Transeastern Settlement.

**B.    Claims Against the Senior Transeastern Lenders**

The Committee alleges that the above-recounted sequence of events gives rise to, broadly speaking, two categories of fraudulent transfer claims.[8] The first category is a series of fraudulent transfer claims against the New Lenders. The Committee alleges that "[a]s part of the Transeastern Settlement, TOUSA and Homes LP forced" the Conveying Subsidiaries "to become co-borrowers and guarantors under certain secured credit facilities of approximately $800 million with the New Lenders."[9] (Complaint ¶ 3.) The Committee alleges in Counts I through VI that the obligations the Conveying Subsidiaries incurred as co-borrowers and guarantors on the New Loans were either actual or constructive fraudulent transfers. The Committee seeks relief in the form of both avoidance of these obligations and recovery of any amounts paid (*i.e.*, interest) in connection with the New Loans. (Complaint Prayer Nos. 1, 2.)

The second category of fraudulent transfer claims is pled against the Senior Transeastern Lenders. In Counts VII through XII of the Complaint, the Committee alleges that the payment made to the Senior Transeastern Lenders as part of the Transeastern Settlement was a fraudulent

---

[7]    These new credit facilities are the "New Loans," three secured credit facilities entered into on July 31, 2007: (1) a Second Amended and Restated Revolving Credit Agreement; (2) a $200 million first lien term loan facility; and (3) a $300 million second lien term loan facility. (*See* Complaint ¶ 31.)

[8]    In addition to the fraudulent transfer claims, the Complaint also alleges an avoidable preference (Count XIII) and an objection to allowance of claim (Count XIV). Neither of these counts is alleged against the Senior Transeastern Lenders.

[9]    The "New Lenders" are lenders involved in the New Loans. (*See* Complaint ¶ 31.)

transfer, even though it concededly did not come from any Conveying Subsidiary. The Committee seeks relief in the form of recovery to the Conveying Subsidiaries of the amounts transferred to the Senior Transeastern Lenders. (Complaint Prayer No. 4.) This Motion is only concerned with this second category of fraudulent transfer claims, and only as against the Senior Transeastern Lenders.[10]

The Complaint asserts fraudulent transfer claims against the Senior Transeastern Lenders in six different counts under several different state and federal statutes. Each of these counts against the Senior Transeastern Lenders involves the same basic factual allegations: (1) the contention that the Conveying Subsidiaries did not receive reasonably equivalent value in exchange for the payment to the Senior Transeastern Lenders; (2) the contention that the Conveying Subsidiaries were either insolvent or rendered insolvent by that payment; and (3) the contention that the Senior Transeastern Lenders had actual or constructive knowledge that the Transeastern Transfers or New Lender Claim and Lien Transfers[11] were fraudulent. Not pled in the Complaint, but required under both the state and federal law causes of action, is an allegation that the Conveying Subsidiaries made a transfer to the Senior Transeastern Lenders or that property of the Conveying Subsidiaries was transferred to the Senior Transeastern Lenders.

---

[10]   Counts VII through XII seek avoidance or recovery of the "Transeastern Transfers," which are defined to include both the payment to the Senior Transeastern Lenders and obligations allegedly incurred by the Conveying Subsidiaries in connection with the issuance of $20 million of new 14.75% senior subordinated paid-in-kind notes due July 1, 2015 (the "New Subordinated Notes"). (See Complaint ¶ 4 & n.1.) The New Subordinated Notes were given as consideration to Transeastern Lenders other than the Senior Transeastern Lenders, specifically to holders of other tranches of debt under the Senior Mezzanine Credit Agreement to which the Transeastern JV Entities, among others, were obligated. (See Complaint ¶¶ 19, 25, 28.) Although these six counts are pled collectively against the Senior Transeastern Lenders and holders of the New Subordinated Notes, among others, the portion of the claims with respect to any alleged transfers made or obligations incurred by the Conveying Subsidiaries with respect to the New Subordinated Notes (the "New Subordinated Notes Transfers") are not made against the Senior Transeastern Lenders in their capacity as such and are not the subject of this Motion. The alleged transferees with respect to the New Subordinated Notes Transfers are described in Paragraphs 13 and 14 of the Complaint. (See Complaint ¶¶ 13, 14.) The Senior Transeastern Lenders understand that claims relating to the alleged New Subordinated Notes Transfers are the subject of a separate motion by certain holders of the New Subordinated Notes.

[11]   The "New Lender Claim and Lien Transfers" are defined to include certain secured debt obligations allegedly incurred by the Conveying Subsidiaries in connection with the New Loans. (See Complaint ¶¶ 4, 31, 33.)

## II.    ARGUMENT

### A.    Motion To Dismiss Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a Complaint. Rule 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure 7012, requires dismissal of a claim when the party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

While a motion to dismiss generally requires the court to accept the well-pled allegations of the complaint as true, *see Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007), dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief." *Powell v. United States*, 945 F.2d 374, 375-76 (11th Cir. 1991).[12] Moreover, while detailed factual allegations are not required to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (U.S. 2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation")).[13]

In evaluating a motion to dismiss under Rule 12(b)(6), a court may review documents attached to a complaint without converting the motion to dismiss into one for summary judgment. The Eleventh Circuit has adopted the "incorporation by reference" doctrine, allowing

---

[12]    *See also Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (court should dismiss claims "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action").

[13]    *See also GMC v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions."); *Pardo v. Avanti Corporate Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 640 (Bankr. D. Del. 2001) ("a plaintiff must do more than merely recite the statutory language to survive a motion to dismiss"); *Enron Corp. v. Granite Constr. Co. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2400369, at *3 (Bankr. S.D.N.Y. May 11, 2006) (similar).

a court to review documents attached to the complaint that are central to the plaintiff's claim and are undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (citation omitted).

## B.    Fraudulent Transfer Statutes

The Bankruptcy Code permits a trustee, under certain circumstances, to "avoid any transfer" "of an interest of the debtor in property" where the debtor "received less than a reasonably equivalent value in exchange for such transfer" and:

>    I.   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>    II.  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]
>
>    III. intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured[.]

11 U.S.C. § 548(a)(1)(B)(i), (a)(1)(B)(ii)(I)-(III). Section 544(b)(1) similarly provides that a trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable [state] law." 11 U.S.C. § 544.[14]

To plead a fraudulent transfer claim, a plaintiff must allege facts in sufficient detail to identify the alleged transfers and enable the defendants to understand the claims against them. Under 11 U.S.C. § 548, a plaintiff must identify: (1) the date of the transfer; (2) the amount of

---

[14]    The Committee also brings claims under Florida Statutes ¶¶ 726.105, Florida Statutes ¶¶ 726.105(1), 726.106, 726.108, and New York Debtor and Creditor Law ¶¶ 273, 274, 275, 278. *See, e.g., Goldberg v. Chong*, No. 07-20931-CIV, 2007 WL 2028792, at *4 (S.D. Fla. July 11, 2007) (holding that the Florida Statutes and the Bankruptcy Code are analogous "in form and substance"); *Kapila v. WLN Family Ltd. P'Ship (In re Leneve)*, 341 B.R. 53, 56 n.1 (Bankr. S.D. Fla. 2006) (holding that Florida fraudulent transfer provisions are essentially identical to those in the Bankruptcy Code, with the exception of a longer statute of limitations under state law); *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rests., Inc.)*, 337 B.R. 495, 501 (Bankr. S.D.N.Y. 2006) (except for the longer statute of limitations under the state statute, the Bankruptcy Code "closely parallels" New York fraudulent conveyance law); *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc. (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 n.1 (Bankr. S.D.N.Y. 1993) ("[t]his Court need not discuss the components of a fraudulent conveyance claim under New York state law, [because] the elements are almost identical to that of 11 U.S.C. § 548(a)(2)").

the transfer; (3) the transferor(s); and (4) the transferee(s).  *Giuliano v. United States Nursing Corp. (In re Lexington Healthcare Group, Inc.)*, 339 B.R. 570, 575 (Bankr. D. Del. 2006).[15]  In other words, the plaintiff is required to identify the payments the debtor made and that it seeks to avoid.  The plaintiff is also required to provide the amount of consideration the debtor received and the debtor's financial condition at the time it made the transfer.  *In re Astropower Liquidating Trust*, 335 B.R. 309, 333 (Bankr. D. Del. 2005); *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*,  327 B.R. 711, 718 (Bankr. D. Del. 2005); *In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005).

**C.    The Complaint Fails To Plead That the
        Conveying Subsidiaries Were Transferors**

The Committee has failed to allege the most basic element of a claim to avoid and recover a fraudulent transfer, specifically that the plaintiffs seeking to avoid and recover a transfer actually made the subject transfer.  To avoid a payment as a fraudulent transfer, the plaintiff must have been the transferor of the subject transfer because "[i]f no transfer has taken place, there is nothing to avoid or recover."  *Edgewater Med. Ctr. v. Edgewater Prop. Co. (In re Edgewater Med. Ctr.)*, 373 B.R. 845, 852 (Bankr. N.D. Ill. 2007).  This is a threshold statutory

---

[15]    A number of courts have held that the particularity requirement under Federal Rule of Civil Procedure 9(b) applies to all fraud claims, including those based on constructive fraud.  *See, e.g.*, *General Elec. Capital v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*, 386 B.R. 37, 53 (Bankr. D. Del. 2008); *Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.)*, No. 05-80625, 2006 WL 3663243, at *2 (S.D. Fla. Nov. 14, 2006); *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005); *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 378 (S.D. Fla. 1999); *Levitt v. Riddell Sports (In re MacGregor Sporting Goods)*, 199 B.R. 502, 515 (Bankr. D.N.J. 1995); *Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 367 (N.D. Fla. 1995); *Victor v. Riklis*, No. 91 Civ. 2897, 1992 WL 122911, at *5 n.6 (S.D.N.Y. May 15, 1992).  Other courts have not followed this line of authority, but have applied Federal Rule of Civil Procedure 8's standard to constructive fraud claims.  *See, e.g.*, *Court Appointed Receiver for Lancer Mgmt. Group LLC v. 169838 CANADA, Inc.*, No. 05-60235-CIV, 2008 WL 2262063, at *2 (S.D. Fla. May 30, 2008); *Gulf Coast Produce, Inc. v. American Growers, Inc.*, No. 07-80633-CIV, 2008 WL 660100, at *5 (S.D. Fla. Mar. 7, 2008).  This may ultimately be a distinction without a difference as courts applying either Rule 8 or 9(b) have generally required that the same details be identified in the complaint, and have even applied one rule while citing for support cases that have applied the other rule.  *Compare Giuliano*, 339 B.R. at 575 (applying Rule 9(b) and holding that complaint must identify the transfer "by date, amount, name of the transferor, and name of the transferee"), *with Cohen v. Morgan Schiff & Co. (In re Friedman's Inc.)*, 385 B.R. 381, 466-67 (S.D. Ga. 2008) (applying Rule 8 but citing with approval *Giuliano* to state the same pleading requirements).

requirement. *See, e.g.,* Florida Statutes ¶¶ 726.105(1), 726.106(1) ("A transfer made or obligation incurred *by a debtor*") (emphasis added); *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.),* 287 B.R. 98, 107 (Bankr. S.D.N.Y. 2002) (to recover under 11 U.S.C. § 548, trustee must demonstrate that "*the debtor* transferred an interest in property") (emphasis added); *Edgewater Med. Ctr.,* 373 B.R. at 852 ("'Under the Code, a "transfer" is a prerequisite to the trustee's [or debtor in possession's] ability to avoid a fraudulent conveyance and to augment the estate to benefit creditors.'") (quoting *Continental Title Co. v. The Peoples Gas Light & Coke Co.,* No. 96 C 3257, 1999 WL 753933, at *2 (N.D. Ill. Sept. 15, 1999)).

The Complaint does not allege that the Conveying Subsidiaries, the entities on whose behalf the Committee asserts these claims, made *any* transfer to the Senior Transeastern Lenders. Instead, the Committee repeatedly identifies the transferor of the amounts paid to the Senior Transeastern Lenders as TOUSA or Homes LP, *neither of which is a plaintiff.* In this regard, the Complaint alleges that "TOUSA . . . repa[id] a debt for which [the Conveying Subsidiaries] were not liable" (Complaint ¶ 1) and "TOUSA and Homes LLP [sic] used the proceeds of . . . [new] credit facilities . . . to satisfy the Transeastern Debt." (Complaint ¶ 3.) Apparently recognizing the fatal defect in these allegations of the Complaint, the Committee in other parts of the Complaint resorts to obfuscation or the passive voice to camouflage the fact that the Conveying Subsidiaries did not make any transfer to the Transeastern Senior Lenders, asserting as follows:

> [N]o less than $422.8 million of the proceeds from the New Debt plus other consideration ***was paid*** to CIT and other parties in satisfaction of the Transeastern Debt.

(Complaint ¶ 33 (emphasis added).)

> [T]he Conveying Subsidiaries did not receive reasonably equivalent value . . . from CIT and the Transeastern Lenders . . . in exchange for the transfer of over $422 million in satisfaction of the Transeastern Debt.

(Complaint ¶ 4.) Neither of these allegations, nor any other in the Complaint, asserts that the

Conveying Subsidiaries transferred anything to the Senior Transeastern Lenders, which allegation would contradict both the facts known to the Committee and its separate allegation that either TOUSA or Homes LP was the transferor. (*See* Complaint ¶¶ 1, 3.)[16]  On that basis alone, Counts VII through XII against the Transeastern Lenders must be dismissed.

The fact that the transferor of the allegedly fraudulent transfer is not a plaintiff does not appear to be an oversight, but rather a conscious decision by the Committee because the facts preclude the assertion of such a claim.  The Court granted the Committee standing and authority to prosecute avoidance actions on behalf of the estates of all Debtors, including TOUSA. (*See* Order Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors of TOUSA, Inc., *et. al.,* To Prosecute Avoidance Actions on Behalf of the Debtors' Estates, entered May 28, 2008, at ¶ 2 & n.1.) (D.E. 1092.)  Despite this broad grant, the Committee did not include TOUSA among the Conveying Subsidiaries on whose behalf it is acting.  At the hearing on May 22, 2008, counsel for the Committee explained this tactical decision as follows:

> Finally, with respect to the comments of the first lien lender's counsel, he pointed out that we have not included TOUSA itself as a plaintiff on the fraudulent conveyance part of the case, although they would be on the preference side, your Honor.
>
> And that's true, but we have not taken a position and it does not follow from that that we believe TOUSA, at the TOUSA level, was solvent or was not. *It simply reflects the fact that they did get reasonably equivalent value, most likely, in connection with the transaction.*

(May 22, 2008 Hearing Tr. at 155:11-22 (emphasis added).)  Counsel's comments not only explain why TOUSA was not named as a plaintiff, but also why the Complaint is so insistent that none of the Conveying Subsidiaries was a party to the Transeastern Debt.  The Committee

---

[16]  The Complaint elsewhere refers to EH/Transeastern, LLC and TE/TOUSA Senior, LLC, the borrowers under the Senior Credit Agreement, as the entities that "agreed to pay $421,522,193.46" in connection with the Transeastern Settlement. (*See* Complaint ¶ 27.)  It stops short, however, of asserting that those entities were transferors on the payment to the Senior Transeastern Lenders.  Even if those parties were alleged to be the transferors to the Senior Transeastern Lenders, their claims would fail because they were clearly provided reasonably equivalent value through the retirement of their antecedent debt. (*See infra* at 12.)

drafted its Complaint to try to avoid a fatal flaw in *any* effort to recover an alleged fraudulent transfer from the Senior Transeastern Lenders: the consideration that the Senior Transeastern Lenders gave up was worth *at least* $422.8 million. Whatever the Committee's tactical considerations might be, the failure to name TOUSA – the admitted transferor – as a plaintiff in this action is fatal to the fraudulent transfer claims against the Senior Transeastern Lenders as a matter of law. Accordingly, Counts VII through XII should be dismissed.

**D.    The Complaint Does Not Allege That the Payment to the Senior Transeastern Lenders Was Property of the Conveying Subsidiaries**

In addition to failing to bring a claim on behalf of TOUSA, the transferor of the payment made under the Transeastern Settlement, the Committee also fails to allege that the approximately $422.8 million paid to the Senior Transeastern Lenders was ever the property of the Conveying Subsidiaries. Sections 548(a)(1)(B) and 544(b)(1) require that the transfer supporting a fraudulent transfer action must be of "property of the debtor." 11 U.S.C. § 548(a)(1)(B); 11 U.S.C. § 544(b)(1). An essential element is therefore that the debtor had an interest in or control over the property transferred. *See, e.g., Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1180-82 (11th Cir. 1987). Courts in this Circuit have identified two components to the test of whether a debtor has control over property transferred: the power to designate the party receiving the property and the power to disburse the property to that party. *Dzikowski v. NASD Regulation, Inc.*, 247 B.R. 867, 869-70 (S.D. Fla. 2000).[17]

The Committee does not allege that the Conveying Subsidiaries had control of or any interest in the property transferred to the Senior Transeastern Lenders. If anything, the Complaint highlights the lack of control of the Conveying Subsidiaries over the funds and over

---

[17]    *See also Estes v. N&D Props. Inc. (In re N&D Props., Inc.)*, 799 F.2d 726, 733 (11th Cir. 1986) (holding that the property transferred – a collateral pledge – was not the property of the debtor and hence the transfer could not be avoided, notwithstanding that the pledge had been made on the debtor's behalf); *Miner*, 185 B.R. at 365 (holding that debtor-in-possession and sole shareholder of debtor corporation did not have control over corporate assets sold at pre-petition foreclosure sale).

every aspect of the payment. The Complaint alleges that the Conveying Subsidiaries were "forced" to take on debt and obligations in connection with the New Loans and that the transfer to the Senior Transeastern Lenders was in connection with the Transeastern Settlement, which concerned antecedent debts of TOUSA, Homes LP, and the Transeastern JV Subsidiaries – not the Conveying Subsidiaries. (*See supra* at 4-5, 10-11; Complaint ¶¶ 1, 4, 33, 34.) Nothing in the Complaint even remotely hints that the Conveying Subsidiaries had any ability to control the amount paid to the Senior Transeastern Lenders or that the Senior Transeastern Lenders should receive those funds. The Committee cannot contend that the amounts transferred to the Senior Transeastern Lenders was the property of the Conveying Subsidiaries such that a fraudulent transfer claim could be asserted on behalf of these parties.

**E.    The Senior Transeastern Lenders Are Not Liable As Subsequent Transferees of an Incurred Obligation**

The Committee conclusorily asserts that the Senior Transeastern Lenders had actual or constructive knowledge that the Transeastern Transfers or New Lender Claim and Lien Transfers were fraudulent. As dubious a factual premise as that is, even if true (and it is not), it does not state a claim against the Senior Transeastern Lenders. In so alleging, the Committee appears to be asserting that the Senior Transeastern Lenders are liable as "immediate or mediate transferee[s]" (commonly referred to as "subsequent transferees") under Section 550 of the Bankruptcy Code and its state law analogs, which permit recovery of avoided transfers from any subsequent transferee provided that such subsequent transferee did not "take[ ]for value . . ., in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). Such a claim may lie only against "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). The Senior Transeastern Lenders are not subsequent transferees of any avoidable transfer, and therefore cannot be liable to the Conveying Subsidiaries under this theory.

The Complaint fails to identify any initial transfer that is sought to be avoided by the Committee that could possibly give rise to the subsequent transferee liability under Section 550(b)(1) that is claimed in the Complaint. The only transaction that involves the Conveying Subsidiaries (the plaintiffs) pled in the Complaint is the incurrence by the Conveying Subsidiaries of obligations to the New Lenders as part of the New Loans.[18] Such a transaction is not even alleged to be a fraudulent transfer, but rather it is alleged to be a fraudulent incurrence of an obligation by the Conveying Subsidiaries.

It is axiomatic that there is no such thing as a claim against a subsequent transferee of a fraudulently incurred obligation, although that appears to be exactly what the Committee is alleging in the Complaint. In addition to permitting avoidance of fraudulent transfers, Section 548 of the Bankruptcy Code, entitled "Fraudulent transfers *and obligations*," permits a trustee to avoid "any obligation [] incurred by the debtor" if the obligation is incurred through actual or constructive fraud. *See* 11 U.S.C. § 548(a) (emphasis added). Section 550 of the Bankruptcy Code, entitled "Liability of transferee of *avoided transfer*," provides for a mechanism for a trustee to recover any *transfer* avoided under Section 548, and therein provides for the recovery from the initial transferee or any subsequent transferee. *See* 11 U.S.C. § 550 (emphasis added). Section 550 does not deal at all with claims for fraudulently incurred obligations, because the remedy of avoidance of an obligation is complete relief standing alone for a fraudulently incurred obligation. Because the only transaction in which the Conveying Subsidiaries are involved is a transaction by which they allegedly fraudulently incurred an obligation to the New Lenders, those claims can only stand against – if anyone – the New Lenders; and not against the Senior Transeastern Lenders on a subsequent transferee theory of liability.

---

[18]    The portion of the Committee's claim against the New Lenders that seeks avoidance and recovery of payments made to the New Lenders after the closing of the New Loans is not relevant to this analysis as such transfers, even if avoidable, are not alleged to have been transferred subsequently to the Senior Transeastern Lenders.

This principle is illustrated by considering the effect of any outcome on the Committee's claims against the New Lenders. If the Committee prevails on its claims against the New Lenders, then the Conveying Subsidiaries are not obligated on the New Loans. Accordingly, the Conveying Subsidiaries clearly cannot recover from the Senior Transeastern Lenders because the Conveying Subsidiaries are not victims of any unremedied fraudulent transfer. If, by contrast, the Committee does not prevail on its claims against the New Lenders, then the incurrence of the obligations by the Conveying Subsidiaries by definition was not fraudulent. In that case, the Conveying Subsidiaries would have no claim against any party as a subsequent transferee thereof, including the Senior Transeastern Lenders. It is therefore clear that whatever the result of the Conveying Subsidiaries' claims against the New Lenders, the Conveying Subsidiaries will not have any claim against the Senior Transeastern Lenders.

F.    **The Complaint Improperly Repeats Statutory Elements and Does Not Allege Facts To Satisfy Those Elements**

The Complaint also fails because the Committee has inappropriately done nothing more than repeat the language of the applicable statutes in the form of allegations. For example, a plaintiff is required to allege facts about the amount of consideration it received and the debtor's financial condition at the time of the transfer to survive a motion to dismiss. (*See supra* at 9-10.) As to these elements, the Complaint alleges only that, "[o]n July 31, 2007, the Conveying Subsidiaries were (i) either insolvent or rendered insolvent by the Fraudulent Transfers, (ii) left with unreasonably small capital, or (iii) unable to pay their debts as they were to come due." (Complaint ¶ 5.)  These allegations simply parrot the language of Bankruptcy Code Section 548(a)(1)(B)(ii)(I) and (III) (*see supra* at 8) without providing any factual detail and are clearly insufficient. *See Global Link*, 327 B.R. at 718 (dismissing fraudulent transfer claims where plaintiff repeated statutory language and presented "no information on the Debtor's financial status or the value of what was received in exchange"). As the court observed in *Pardo*, "the

pleading requirements of the Federal Rules are not intended to reduce a defendant to guesswork and conjecture." 274 B.R. at 639-40. Allegations such as these provide no factual basis for the claims and improperly require guesswork on the part of defendants. For these reasons as well, the Complaint fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

## G.    The Committee Should Not Be Permitted To Amend the Complaint

The Court should not allow the Committee to amend Counts VII through XII of the Complaint because any such amendment would be futile. Leave to amend a complaint that has been dismissed should be denied where the amendment would be futile and the complaint would still be subject to dismissal. *See Hall v. United Ins. Co.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (court may deny leave to amend where amendment would be futile); *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) (if a complaint as amended is still subject to dismissal, leave to amend need not be given); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (holding that amendment was futile because undisputed facts showed that third party was owner of facility, so defendant could not be liable under CERCLA as owner).

### 1.    The Committee Has Not – And Cannot – Plead a Transferor

As discussed above, the Complaint itself undermines any claim that could be brought against the Senior Transeastern Lenders even in an amendment of the claims in Counts VII through XII. Any amended pleading would have to allege that either TOUSA or EH/Transeastern LLC made the transfer to the Senior Transeastern Lenders. (*See* Complaint ¶¶ 1 (alleging TOUSA was transferor), 3 (same), 27 (EH/Transeastern, LLC "agreed to pay $421,522,193.46" in connection with the Transeastern Settlement).) As a matter of law,

however, neither party can assert a fraudulent transfer claim against the Senior Transeastern Lenders.

*First*, the Committee has admitted that it does not have a good-faith basis for asserting fraudulent transfer claims on behalf of TOUSA because the facts do not support such claims. As discussed above, the Committee's counsel conceded to the Court that TOUSA "most likely" received reasonably equivalent value for its transfer to the Senior Transeastern Lenders. (*See* *supra* at 12.)  TOUSA would therefore not have viable fraudulent transfer claims against the Senior Transeastern Lenders and inclusion of TOUSA among the Conveying Subsidiaries would render Counts VII through XII impossible for the Committee to prove.

*Second*, EH/Transeastern, LLC was, with TE/TOUSA Senior, LLC, one of the borrowers under the $450,000,000 Senior Credit Agreement with the Senior Transeastern Lenders. (*See* *supra* at 4 n.6.)  As part of the Transeastern Settlement, EH/Transeastern, LLC and TE/TOUSA Senior, LLC "propose[d] to repay in full the principal of and interest on and other amounts owing under the Senior Credit Agreement." (*See* Mutual Release and Consent Agreement, dated as of July 31, 2007, with respect to the Senior Credit Agreement, which is referred to in Paragraph 25 of the Complaint as the "CIT Settlement Agreement.")[19]  To the extent that the Committee were to allege that EH/Transeastern, LLC was the transferor on its fraudulent transfer claims against the Senior Transeastern Lenders, such claims would fail as a matter of law. The payment of antecedent debt by EH/Transeastern, LLC is reasonably equivalent value for any transfer it may be alleged to have made to the Senior Transeastern Lenders. *See* 11 U.S.C. § 548(d)(2)(A) ("value" includes "satisfaction or securing of a present or antecedent debt of the debtor"); *Uiterwyk Corp. v. Maher Terminals, Inc. (In re Uiterwyk Corp.)*, 75 B.R. 33, 34

---

[19]  TOUSA, which (along with other TOUSA-related entities) had guaranty obligations under the Senior Credit Agreement (*see supra* at 3, 4), was also a party to the CIT Settlement Agreement. The Complaint cites to and explicitly relies upon the Senior Credit Agreement and the CIT Settlement Agreement.

(Bankr. M.D. Fla. 1987) (holding that a reduction in debt is sufficient to establish equivalent value); *Kapila*, 341 B.R. at 62.[20] Such an amendment would be futile.

### 2.    Amendment Would Be Futile Because the Senior Transeastern Lenders Have a Right of Recoupment

Even if the Committee could amend to plead claims against the Senior Transeastern Lenders, such amendment would be futile because the Senior Traneastern Lenders would have a right of recoupment for the full amount of any such claim. Recoupment is available as a counterclaim to a fraudulent transfer claim where both claims arise out of the same transaction as the plaintiff's cause of action. *See, e.g., Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.)*, 157 B.R. 66, 73 (Bankr. S.D.N.Y. 1993). Recoupment functions as a deduction from any recovery by a plaintiff. *See, e.g., In re Graboyes*, 223 F. App'x 112, 115 (3d Cir. 2007) ("The doctrine of recoupment allows a defendant 'to claim, by way of deduction, all just allowances or demands, accruing to him in respect of the same transaction that forms the ground of the action.'") (quoting *Kline v. Blue Shield of Pa.*, 556 A.2d 1365, 1368 (Pa. Super. Ct. 1989). As the Fifth Circuit has stated, "'[r]ecoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff *which arose out of the same transaction* to arrive at a just and proper liability on plaintiff's claim.'" *Holford v. Powers (Matter of Holford)*, 896 F.2d 176, 178 (5th Cir. 1990) (quoting 5 Lawrence P. King, Collier on Bankruptcy ¶ 553.03 (15th ed. 1984)) (emphasis in *Holford*).

Under the Senior Credit Agreement, the "Borrower Parties," which included TOUSA, EH/Transeastern, LLC and TE/TOUSA Senior, LLC (among other TOUSA-related entities), broadly agreed to indemnify and hold the Senior Transeastern Lenders harmless

---

[20]    *See also C.H. Rider & Family v. Wyle (In re United Energy Corp.)*, 102 B.R. 757, 763 (B.A.P. 9th Cir. 1989) (payment on antecedent debt is ordinarily not recoverable as a fraudulent transfer because existing debt is deemed valid consideration for payment), *aff'd*, 944 F.2d 589 (9th Cir. 1991); *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor").

from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, charges, expenses and disbursements (including reasonable attorney's fees and expenses) of any kind or nature whatsoever which may at any time (including at any time following repayment of the Loan and the termination, resignation or replacement of the Administrative Agent or replacement of any Lender) be imposed on, incurred by or asserted against any such Person in any way relating to or arising out of this [Senior Credit] Agreement or any document contemplated by or referred to herein, or the transactions contemplated hereby, or any action taken or omitted by any such Person under or in connection with any of the foregoing, including with respect to any investigation, litigation or proceeding (including any insolvency proceeding or appellate proceeding) related to or arising out of this [Senior Credit] Agreement or the Loan or the use of the proceeds therefore, whether or not any Indemnified Person is a party thereto.

(Senior Credit Agreement § 9.14.)[21]  On the basis of this indemnity, the Senior Transeastern Lenders would therefore have a right of recoupment, on an equal basis, against TOUSA, EH/Transeastern, LLC, or TE/TOUSA Senior, LLC for any damages arising out of the same transaction for which the Committee seeks recovery.  As such, even if the Committee could amend its complaint to assert claims on behalf of either TOUSA or the co-borrowers under the Senior Credit Agreement (EH/Transeastern, LLC or TE/TOUSA Senior, LLC) as transferor, which it cannot, and prove those claims, which it cannot, the Committee cannot recover from the Senior Transeastern Lenders on such claims because any recovery from them would be reduced, on an equal basis, as a result of the indemnity.  Accordingly, any amendment to make such claims would be futile.

## CONCLUSION

For the above-stated reasons, the Senior Transeastern Lenders respectfully request that the Court enter an order dismissing with prejudice, under Federal Rule of Civil Procedure 12(b)(6), Counts VII through XII asserted against them because the Complaint fails to state a claim upon which relief can be granted.  The Senior Transeastern Lenders also respectfully

---

[21]    In the CIT Settlement Agreement, the parties expressly agreed that the indemnification obligations of the Senior Credit Agreement survived, defining these obligations as among the "Surviving Obligations." (*See* CIT Settlement Agreement § 3.)

request that the Court not allow the Committee to amend Counts VII through XII because any such amendment would be futile, and that the Court grant the Senior Transeastern Lenders such further and additional relief as the Court deems just and equitable.

### Attorney Certification

I, Michael I. Goldberg  hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A) and that the attorneys with Milbank Tweed, Hadley & McCloy, LLP, appearing pro hac vice in this matter, were admitted pursuant to Court Order dated August 27, 2008 as to Dennis C. O'Donnell (D.E. 46); David R. Eastlake (D.E. 48); Andrew W. LeBlanc (D.E. 48); Andrew T. Bierne (D.E. 49) and dated August 28, 2008 as to Dennis F. Dunne (D.E. 53).

Respectfully submitted,

MILBANK, TWEED, HADLEY & McCLOY LLP
Dennis F. Dunne (pro hac vice)
Andrew M. Leblanc (pro hac vice)
Dennis C. O'Donnell (pro hac vice)
Andrew T. Bierne (pro hac vice)
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: 212-530-5000
Facsimile: 212-530-5219

and

AKERMAN SENTERFITT
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
Email:  michael.goldberg@akerman.com

By:  /s/ Michael I. Goldberg
      Michael I. Goldberg, Esq.
      Florida Bar Number:  886602

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2008, I electronically filed the foregoing *SENIOR TRANSEASTERN LENDERS' MOTION TO DISMISS ADVERSARY COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION* with the Clerk of the Court using CM/ECF.  I also certify that notification of the filing of the foregoing document will be served on all counsel of record via CM/ECF or mail as indicated on the attached Service List

By:  /s/ Michael I. Goldberg
Michael I. Goldberg

## SERVICE LIST

Patricia A. Redmond, Esq.
Stearns Weaver Miller Weissler
 Alhadeff & Sitterson, P.A.
150 W. Flagler St., Suite 2500
Miami, FL 33130
via email: predmond@swmwas.com
*Counsel for Official Committee of*
 *Unsecured Creditors of Tosua, Inc.*

Michael L. Waldman, Esquire
Robbins, Russell, Englert, Orseck,
Untereiner & Sauberg, LLP
1801 K. Street, N.W.
Suite 411-L
Washington, DC 20006
via email: mwaldman@robbinsrussell.com

Paul Steven Singerman, Esq.
Berger Singerman, P.A.
200 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
via email: singerman@bergersingerman.com
*Counsel for Tousa, Inc.*

Allan E. Wulbern, Esq.
Stephone D. Busey, Esq.
Smith, Hulsey & Busey
225 Water St., # 1800
Jacksonville, FL 32202
via email: awulbern@smithhulsey.com
*Counsel for Citicorp North America, Inc.*

Amy D. Harris, Esq.
Stichter, Riedel, Blain & Prosser, P.A.
110 E. Madison St., #200
Tampa, FL 33602
via email: aharris.ecf@srbp.com

Joseph H. Smolinksy, Esq. (via U.S. Mail)
Chadbourne & Parke, LLP
30 Rockefeller Plaza
New York, New York 10012

Scott L. Baena, Esq.
Matthew I. Kramer, Esq.
Jeffrey I. Snyder, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Blvd., #2500
Miami, FL  33131
via email:  jsnyder@bilzin.com
*Counsel for Wells Fargo Bank, N.A.*

Gregory W. Nye, Esq. (via U.S. Mail)
Bracewell & Giuliani LLP
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT  06103
gregory.nye@bgllp.com
*Counsel for Wells Fargo Bank, N.A.*

M. Natasha Labovitz, Esq. (via U.S. Mail)
Kirkland & Ellis, LLP
Citigroup Center
153 East 53 Street
New York, New York 10022-4611
via email: nlabovitz@akirkland.com