Tagged opinion

ORDERED in the Southern District of Florida on July 7, 2009



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Case No. 08-10928-BKC-JKO |
| TOUSA, INC., *et al.* | Chapter 11 |
| Debtors. | Jointly Administered |
| In re: | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TOUSA, INC., *et al.*, | |
| Plaintiff, | Adv. Pro. No. 08-01435-JKO-A |
| v. | |
| CITICORP NORTH AMERICA, INC., *et al.*, | |
| Defendants. | |

### ORDER GRANTING THIRD-PARTY DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the court for hearing on July 6, 2009, upon the Debtors-Third

Party Defendants' ("Third Party Defendants" or the "Debtors") Motion for Summary Judgment [DE

358] on the Third Party Complaint brought by Defendants' Citicorp North America, Inc. "(Citi") and Wells Fargo Bank, N.A. ("Wells Fargo", and collectively with Citi, the "Third Party Plaintiffs"). As a matter of law, I find that there are no material facts in dispute between the Third Party Plaintiffs and the Debtors which would preclude the entry of summary judgment in favor of the Third Party Defendants. I further find that the Third-Party Claims are not dependant upon the outcome of the Creditors' Committee's claims in the main litigation and are therefore improper third-party claims under Federal Rule of Bankruptcy Procedure 7014, applying Fed.R.Civ.P. 14. Moreover, the Third-Party Claims are not separate, independent claims capable of standing alone in this adversary proceeding, although this determination is without prejudice to a resolution of such proofs of claim which were timely filed by Citi or Wells Fargo in the Debtors' main case, subject to the normal claims reconciliation process. Finally, I find that the non-responsive, obstructive manner in which Citi and Wells Fargo handled the legitimate discovery requests of the Third-Party Defendants puts those parties at such severe disadvantage in defending the Third-Party Complaint that I will, as a matter of fundamental fairness and in the exercise of my control over my docket,[1] dismiss the Third-Party Complaint, while leaving the parties to deal with the issues involved in the Third-Party Claims in the main case claims objection and reconciliation process.

---

[1] Trial in this case is set for 12 trial days commencing July 13, 2009. Although the trial schedule was tinkered with slightly since then, the basic schedule for trial was fixed by Order [DE 158] entered November 11, 2009, and its start date has not changed. Given the non-responsive nature of Citi's and Wells Fargo' responses to the Third-Party Defendants' discovery propounded on them, Third-Party Defendants would be severely prejudiced by being forced to confront the substance of the Third-Party Claims against them at this time. This prejudice is eliminated by simply handling the issues raised in the Third-Party Complaint as part of the normal claims reconciliation process, in which Citi and Wells Fargo will be free to participate in contested matters governed by Rule 9014, which, of course, invoke substantially all of the procedural protections and discovery provisions available under Part VII of the Bankruptcy Rules.

**Facts**

1.   **Procedural history**

On January 29, 2008, TOUSA, Inc., in concert with numerous of its subsidiary entities, (collectively the "Debtors") filed a voluntary petition under chapter 11 of Title 11 of the United States Code. *See* [DE 1] in the main case. The complaint [DE 1] in this adversary proceeding was filed by the Plaintiff Official Committee of Unsecured Creditors of TOUSA, Inc. (the "Committee" or the "Plaintiff") on July 14, 2008, pursuant to authority given by Order of this Court. I have permitted amendment to the initial complaint and the operative document now before me is the Third Amended Complaint (the "Complaint") [DE 243] filed on February 4, 2009.

Citi and Wells Fargo thereafter answered the Complaint and filed the Third-Party Complaint now at issue before me. In it, the Third-Party Plaintiffs seek a recovery against the Debtors on the curious theory that *if* Citi and Wells Fargo are liable on the avoidable transfer claims brought by the Committee, ***not on the substance of the Committee's claims against them, but rather on a wholly-unrelated 'springing' breach of solvency warranties in the relevant loan agreements,*** then, on that theory, the Third-Party Defendants are liable to the Third-Party Plaintiffs on a breach of contract claim.

In its Complaint, the Committee attacks a significant feature of pre-petition financing undertaken by the Debtors on July 31, 2007. Prior to that date, two, *but only two*, of the Debtors – TOUSA, Inc., and TOUSA Homes, Inc., – were liable on more than $400 million in syndicated loans to a consortium lead by Deutsche Bank. As a result of state court litigation in New York and Florida, the Debtors undertook in a highly criticized transaction to cash out the Deutsche Bank syndicate and to replace it with two term loans: the First Lien Loan in the amount of some $200

million to a syndicate lead by Citi, and the Second Term Loan in the amount of some $300 million to a syndicate now lead by Wells Fargo. Unlike the structure of the Deutsche Bank financing, Citi and Wells Fargo insisted that *every* TOUSA subsidiary of any material size become both a co-borrower and a pledgor of all of its collateral. The newly-liable TOUSA entities are referred to in the litigation as the "Conveying Subsidiaries," and it is contended that the bulk of the collateral pledged in the July 2007 transaction was their previously unencumbered property.

The Committee contends that the July 2007 transaction violates the provisions of 11 U.S.C. § 548(a)(1)(B) in that the Conveying Subsidiaries (i) received less than reasonably equivalent value in exchange for their transfers of property and incurrence of the new obligations; and (ii) (I) were insolvent on July 31, 2007 or became such as a result of the transfers by them; or (II) were engaged in business for which they maintained insufficient property/unreasonably small capital. The Committee also seeks relief under substantially similar provisions of Florida and New York state law, and may rely on other provisions of the federal fraudulent transfer provisions.[2]

It is clear now, less than a week before trial starts, that the issue of solvency of the Conveying Subsidiaries will be critical to the success of the claims and defenses. The Committee's Third Amended Complaint makes clear that it will seek to prove only that the Conveying Subsidiaries were insolvent on July 31, 2007, under the various statutory iterations of federal and state law. It is significantly the case, however, that the Committee has in no way alleged or sought a determination that TOUSA, Inc., or TOUSA Homes, Inc., or that all of the TOUSA entities on a consolidated basis,

---

[2]The Committee also alleges that the transfer of a general intangible in the form of the Debtors' net operating loss carrybacks under the Internal Revenue Code was preferential under § 547. I have already determined [DE 379] that the transfer from the Debtors to Citi and Wells Fargo of the Debtors' tax carryback of some $207 million occurred on January 1, 2008, well within the preference period.

were insolvent on any date.

This distinction is critical to understanding the Debtors' motion for summary judgment on the Third-Party Complaint. The Third-Party Complaint alleges that *if* the Committee prevails in the main case against Citi, Wells Fargo, and other defendants, then Citi and Wells Fargo will have springing claims against the Debtors for violation of a loan representation. That representation, repeated four times in various iterations contained in Section 4.20 of each respective loan agreement, is a representation that TOUSA, Inc., *(on a Consolidated basis with their Subsidiaries)* will be solvent following the Citi/Wells Fargo takeout financing.

## Discussion

### 2. Jurisdiction and venue

The Third-Party Complaint pending before me seeks to avoid fraudulent transfers pursuant to 11 U.S.C. § 548 and applicable state law, to avoid preferences pursuant to 11 U.S.C. § 547, and to avoid such transfers and preferences under 11 U.S.C. § 550. The Third-Party Complaint which is the subject of this Order allegedly seeks recovery by the Defendants from the Debtors on claims arising out of a separate breach of contractual warranties. I have jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(a) and 157(a). These are core proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(B), (F), (H) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

### 3. Summary judgment standards

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable doubts in that party's favor. See also *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324.; *Poole v. Country*

*Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[3] By its very terms the standard for summary judgment provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id.* at 248.

4. **The Third-Party claims are not dependent on the outcome of the Committee's claims in the main litigation and are therefore improper under Rule 7014**

Rule 7014, applying Fed.R.Civ.P. 14, as interpreted by the Eleventh Circuit,

> allows a defendant to assert a claim against any person not a party to the main action only if the third person's liability on that claim is in some way dependent upon the outcome of the main claim.... Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim.

*United States v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir. 1987).

In the event that the Committee prevails in establishing that the Conveying Subsidiaries were insolvent on the relevant dates and that they are otherwise entitled to recover from Citi and Wells Fargo on the fraudulent transfer claims, it is obvious that Citi and Wells Fargo are *not* seeking to impose third-party liability on the Debtors on account of the fraudulent transfers. This point is so obvious that the parties did not mention it in their pleadings or oral argument. Such a carry-over

---

[3]Fifth Circuit Decisions entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

liability is, of course, the garden variety form of third-party claim under Rule 14. Rather, Citi and Wells Fargo are arguing that *because some on the evidence upon which the Committee may rely at trial* goes to demonstrate that all of the TOUSA entities were insolvent on the relevant dates, that they can rely *on such evidence*[4] to assert the breach of warranty claim under § 4.20 of the various loan agreements. Both the Third Amended Complaint and the Committee's consistent position during this litigation is that they have not, do not, will not seek at assert, and will not seek entry of a judgment making any finding, with respect the solvency *vel non* of TOUSA, Inc., and TOUSA Homes, Inc., or of the TOUSA entities on a consolidated basis.

It is indisputably clear that § 4.20 of the various loan agreements makes no representation whatsoever that any of the Conveying Subsidiaries was solvent on the relevant dates, or indeed ever. No party has alleged in any pleading or argument asking me to determine that TOUSA and its subsidiaries were insolvent on a consolidated basis. There is thus a fatal disconnect between the Third-Party Complaint and the Committee's Complaint. The Third-Party claims do arise out of the same general set of facts as the Committee's main claim, but those Third-Party claims do not *depend* on the outcome of the main claim. *See Olivarrieta, supra,* 812 F.2d at 643; *Southeast Mortgage Co. v. Mullins,* 514 F.2d 749, 749-50 (5th Cir. 1975), holding that:

> [Rule 14] permits the use of the procedural device of impleader only when the third party defendant's potential liability is dependent upon the outcome of the main claim.

*See also United States v. Joe Grasso & Sons, Inc.,* 380 F.2d 749, 751-52 (5th Cir. 1967).

It is, as Citi and Wells Fargo argue, "efficient" to combine separate actions in the same judicial proceeding. Efficiency is highly desirable. But Rule 14 has limits as to what sort of

---

[4] Perhaps that will be possible in succeeding claims litigation, although I make no observations, let alone rulings, on collateral estoppel or res judicata issues.

controversies can be swept into the same courtroom at the same time:

> Furthermore, impleader is available only against persons who are or may be liable to defendant for all or part of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action.

6 Wright & Miller, Fed. Prac. & Proc. § 1442.

The Committee's claims here – fraudulent transfers and preferences – could not be more different from what it is that the Debtors' warranted. Section 4.20 of the loan agreements is a representation clause, not an indemnification agreement,[5] so the representation must match the Committee's underlying claim to be permitted under Rule 14. It doesn't. The Third-Party Complaint thus violates the restrictions which the Eleventh Circuit and the commentators have imposed upon such practice under Rule 14. The Third-Party Complaint will accordingly be dismissed.

### 5. There is no present factual dispute between the Third-Party Plaintiffs and the Third-Party Defendants

In order to survive summary judgment, the Third-Party Defendants must show some evidence that the Debtors have violated their representation of solvency. Citi and Wells Fargo have consistently, in every relevant pleading and argument, contended that the Debtors were solvent at

---

[5]Citi's argument, relying on such New York cases as *CBS, Inc. v. Ziff-Davis Pub. Co.,* 75 N.Y.2d 496 (1990), which itself relied on Judge Learned Hand's opinion in *Metropolitan Coal Co. v. Howard,* 155 F.2d 780 (2nd Cir. 1946) to the effect that a contractual representation or warranty is "like" an indemnity under New York law, is unavailing. Both cases cited by Citi are inapposite. Neither of the cases appears to involve a contract which contains a separate and complete indemnification provision. By contrast, the loan agreements here do contain express indemnification clauses, clauses upon which, for some reason, neither Citi nor Wells Fargo seek to rely. In the presence of clear indemnification provisions, relying on a mere representation to imply an indemnification duty violates the fundamental principle of contract interpretation that the more specific contractual clause supercedes and controls a more general provision.

all relevant times. The Debtors have agreed that they were solvent at all such times, at least on a fully consolidated basis. There is simply no factual dispute between them. Instead of producing a single shred of evidence that would show that the Debtors were insolvent on a consolidated basis on July 31, 2007, the Third-Party Plaintiffs rely on the possible results of litigation for a possible factual determination that neither the Plaintiff nor the Defendants/Third Party Plaintiffs intend to seek. The Third-Party Defendants make three persuasive arguments: First, that the case is not, in fact, "pleaded in the alternative;" Second, that the "alternative" asserted isn't an alternative at all; and Third, that the Third-Party Plaintiffs have both alleged and admitted facts which defeat their alternative theory.

"Pleading in the alternative" is a perfectly acceptable practice under the Federal Rules of Civil Procedure up to and including the motion to dismiss stage.[6] But once the litigation reaches the summary judgment stage, plaintiffs must produce evidence in support of their claims in order to establish that there are factual issues between the parties which are both "genuine" and "material." *Hasbro, Inc. v. Mikohn Gaming Corp.,* 491 F. Supp. 256, 264 (D. R.I. 2007). The Third-Party Plaintiffs and the Third-Party Defendants perfectly agree that the Debtors, on a consolidated basis, were solvent on July 31, 2007. Citi and Wells Fargo have put forth no evidence to the contrary, and much in support of their contention of solvency. Indeed, Citi and Wells Fargo have repeatedly admitted in discovery that the Debtors were solvent on a consolidated basis. Although a party may plead in the alternative, it cannot proceed to trial on two fundamentally inconsistent theories if it has admitted facts which wholly negate one of those theories. A party is simply bound by the factual averments it makes in responses to discovery. *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 803

---

[6]And seeking alternative remedies on a consistent fact pattern is of course perfectly acceptable through trial.

(3rd Cir. 1992). At the summary judgment stage, the non-moving party must come forward with specific factual evidence, presenting more than mere allegations. *Rice-Lamar v. City of Fort Lauderdale, Florida,* 232 F.3d 836, 840 (11th Cir. 2000). The attempts by Citi and Wells Fargo to rely on evidence which the Committee proposes to introduce at trial for the manufacture of facts upon which they may rely in the Third-Party Complaint does not save them. Because the Third-Party litigation is not dependent upon the results of the Committee's action, Citi and Wells Fargo would be required at trial to show that the TOUSA Debtors were insolvent on a consolidated basis on July 31, 2007. *Ford Motor Co. v. Edgewood Properties, Inc.,* 2007 WL 4526594 at *18-19 (D. N.J. 2007). There is no scintilla of evidence which Citi and Wells Fargo have put forward to support that proposition; this is summary judgment time, and the Third-Party Plaintiffs have no evidence to defeat summary judgment on the stand-alone basis required.

The issues of whether some Debtors were insolvent and whether all of the Debtors on a consolidated basis were solvent, while related, are decidedly not identical. If the Committee succeeds in establishing that each of the Conveying Subsidiaries was insolvent, it does not follow as a matter of law or logic that TOUSA as a whole was insolvent.

There is a fatal discrepancy between the Committee's contention that the *Conveying Subsidiaries* were insolvent on July 31, 2007, and the gravamen of the Third-Party Complaint alleging breach of the Debtors' representation that *all of the Debtors on a consolidated basis* were solvent on that date. Like the absent-minded London commuter, Citi and Wells Fargo have failed to "Mind the Gap;" their Third-Party Complaint has as a result slid between car and platform and has now landed on the fatal third rail.

### 6. The Third-Party claims are not separate, independent claims capable of standing alone

The Third-Party claims cannot survive summary judgment on an independent basis. First, there is no allegation in the Third-Party Complaint that the TOUSA Debtors actually breached their representation that they were solvent on a consolidated basis on July 31, 2007. Instead, Citi and Wells Fargo contend that if the Committee prevails in establishing the insolvency of the Conveying Subsidiaries, then the TOUSA Debtors collectively will have breached the representations contained in § 4.20 of the loan agreements. While this contention is on its face legally and logically flawed, it is also a demonstration of the fact that the Third-Party claims are not being asserted on an independent basis.

Nor are the Third-Party claims "effectively counterclaims" under Rule 13, as Citi alleges in its brief [Citi brief at 10]. "[A]lthough a counterclaim may be asserted against an opposing party, it must involve a mature claim." 6 Wright & Miller, *supra* § 1446. The Third-Party Complaint relies entirely upon an event which has not occurred, the establishment by someone that the TOUSA Debtors were insolvent on a consolidated basis. The Third-Party claims thus fail utterly the requirement of maturity to survive under Rule 13.

### 7. Third-Party Defendants would be unfairly prejudiced if the Third-Party Complaint were to be allowed to proceed to trial

The Third-Party Plaintiffs effectively stonewalled all discovery sought by the Debtors in an effort to determine the basis for any contention by the Third-Party Plaintiffs that the TOUSA Debtors were insolvent on a consolidated basis on July 7, 2007, asserting consistently that any such discovery was "premature." Left with no meaningful discovery because of Citi's and Wells Fargo's decisions,

the Debtors are left flat-footed to defend the Third-Party Complaint. Granting summary judgment here, while preserving Citi's and Wells Fargo's rights to defend their proofs of claim at the claims resolution stage of the main case, is, in part, an effective sanction for what has been unjustifiable discovery gamesmanship by the Third-Party Plaintiffs.

## Conclusion

For each of the foregoing reasons, I find that there are no genuine issues of material fact involving the Third-Party Complaint and that the Third-Party Defendants are entitled to judgment as a matter of law.

Accordingly, it is **ORDERED:**

1. The Third-Party Defendants' Motion for Summary Judgment is hereby **GRANTED.**

2. The Third-Party Complaint is hereby **DISMISSED,** without prejudice to the assertion by Citicorp North America, Inc. or Wells Fargo, N.A., of such claims or defenses relating to solvency *vel non* of any TOUSA Debtor which have heretofore been properly preserved in such proofs of claim as they may have timely filed in the Debtors' main case in connection with the normal claims reconciliation process in the Debtors' cases.

3. Except as specifically set forth in the foregoing decretal paragraph, the Third-Party Complaint is hereby **DISMISSED** with prejudice.

###

Copies to counsel of record by CM/ECF