**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 10-cv-62035-KMM**

IN RE:

TOUSA, INC., *et al.*,

        Debtors,

3V CAPITAL MASTER FUND LTD., *et al.*,

        Appellants,

    v.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TOUSA, INC., *et al.*,

        Appellees.

**<u>ORDER</u>**

THIS CAUSE is before the Court upon remand from the United States District Court of Appeals for the Eleventh Circuit. On May 15, 2012, the Eleventh Circuit issued an Order reversing the judgment of the district court, affirming the liability findings of the bankruptcy court, and remanding the case to the district court to consider the remedies imposed by the bankruptcy court and the matters of assignment and consolidation. See <u>Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.)</u>, 680 F.3d 1298 (11th Cir. 2012). The mandate issued on August 1, 2012. (ECF No. 25).[1] Implementation of the mandate has been delayed for a number of reasons; however, this matter is now ripe for review.

---

[1] Unless otherwise specified, "ECF No." refers to the corresponding docket entry in this case.

Upon consideration of the mandate, the pertinent portions of the record, and being otherwise

fully advised in the premises, the Court enters the following Order.

## I.    BACKGROUND

On January 29, 2008, national homebuilder TOUSA, Inc. ("TOUSA Parent") and its

subsidiaries (together with TOUSA Parent, "TOUSA") filed for bankruptcy in the Southern

District of Florida.  This case was docketed before the Honorable John K. Olson, United States

Bankruptcy Judge, in In re TOUSA, Inc., Bankr. No. 08-10928-JKO.  On May 28, 2008, the

bankruptcy court authorized the Official Committee of Unsecured Creditors of TOUSA (the

"Committee") to prosecute an adversary proceeding on behalf of certain of the subsidiaries (the

"Conveying Subsidiaries") against the First Lien Term Loan Lenders (the "First Lien Lenders"),

the Second Lien Term Loan Lenders (the "Second Lien Lenders," and together with the First

Lien Lenders, the "New Lenders"), and the Senior Transeastern Lenders (the "Transeastern

Lenders").  The bankruptcy court also authorized the Committee to prosecute an adversary

proceeding on behalf of TOUSA Parent against the New Lenders.  The New Lenders and the

Transeastern Lenders were involved, along with TOUSA Parent and the Conveying Subsidiaries,

in a set of inter-related transactions that were consummated on July 31, 2007 (the "July 31

Transaction").[2]

---

[2] The facts of the July 31 Transaction have been recounted a number of times.  See, e.g., Official
Comm. of Unsecured Creditors of TOUSA, Inc. v. Citicorp N. Am., Inc. (In re TOUSA, Inc.),
422 B.R. 783, 787–790 (Bankr. S.D. Fla. 2009); 3V Capital Master Fund Ltd., v. Official Comm.
of Unsecured Creditors of TOUSA, Inc. (In re TOUSA, Inc.), 444 B.R. 613, 628–637 (S.D. Fla.
2011); Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA,
Inc.), 680 F.3d 1298, 1301–1303 (11th Cir. 2012).  There is no need to recount the specific facts
of the transaction for purposes of this Order.  To summarize, on July 31, 2007, TOUSA Parent
paid a settlement of $421 million to the Transeastern Lenders, with loan proceeds from the New
Lenders secured primarily by the assets of the Conveying Subsidiaries.

On July 14, 2008, the Committee filed a Complaint alleging that the Conveying Subsidiaries transferred liens and incurred obligations to the New Lenders in violation of federal and state fraudulent transfer laws, and that the Transeastern Lenders were entities for whose benefit the transfers were made within the meaning of 11 U.S.C. § 550(a). The Committee also alleged that TOUSA Parent's grant of liens to the New Lenders, on its federal income tax refund for tax year 2007, was a preferential transfer under 11 U.S.C. § 547. The adversary proceeding was also docketed before Judge Olson, in <u>Official Comm. of Unsecured Creditors of TOUSA, Inc. v. Citicorp North Am., Inc.,</u> Bankr. No. 08-01435-JKO.

In 2009, Judge Olson held a 13-day trial. Following the trial, Judge Olson issued findings of facts and conclusions of law in favor of the Committee on its claims. <u>See</u> <u>Official Comm. of Unsecured Creditors of TOUSA, Inc. v. Citicorp N. Am., Inc. (In re TOUSA),</u> 422 B.R. 783 (Bankr. S.D. Fla. 2009). The bankruptcy court found that the Conveying Subsidiaries were unable to pay their debts when due, had unreasonably small capital, and were insolvent before and after the transaction; that the Conveying Subsidiaries did not receive reasonably equivalent value for the obligations they incurred; and that the Transeastern Lenders were entities for whose benefit the Conveying Subsidiaries granted liens to the New Lenders. The bankruptcy court adopted a remedy designed to unwind the July 31 Transaction by avoiding the liens to the New Lenders and ordering disgorgements by the Transeastern Lenders, among other things. The bankruptcy court thereafter conducted further proceedings to determine the precise amounts of the required disgorgements and entered final judgments against the New Lenders and the Transeastern Lenders.

On October 21, 2010, the defendants appealed. The appeal was originally assigned to the undersigned, but it was subsequently transferred to the Honorable Alan Stephen Gold, United

States District Judge. (ECF No. 12). On February 11, 2011, Judge Gold entered an Order setting aside the bankruptcy court's Order. (ECF No. 15). Specifically, Judge Gold found that the July 31 Transaction was not a fraudulent transfer because the Conveying Subsidiaries received reasonably equivalent value in exchange for granting liens to the New Lenders and, in the alternative, the Transeastern Lenders were not liable under 11 U.S.C. § 550(a) as entities "for whose benefit" the liens were granted. See 3V Capital Master Fund Ltd., v. Official Comm. of Unsecured Creditors of TOUSA, Inc. (In re TOUSA, Inc.), 444 B.R. 613 (S.D. Fla. 2011).

Judge Gold's Order was subsequently appealed to the Eleventh Circuit. (ECF No. 16). As previously mentioned, on May 15, 2012, following oral argument, the Eleventh Circuit entered an Order reversing the district court, affirming the liability findings of the bankruptcy court, and remanding the case to the district court for consideration of the remedies imposed by the bankruptcy court and the matters of assignment and consolidation. See Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298 (11th Cir. 2012). Specifically, the Eleventh Circuit determined that the bankruptcy court did not clearly err when it found that the Conveying Subsidiaries did not receive reasonably equivalent value in exchange for the liens conveyed to the New Lenders, id. at 1310–1313, and the bankruptcy court did not clearly err when it determined that the Transeastern Lenders were entities "for whose benefit" the liens were transferred, id. at 1313–1315. In its conclusion, the Eleventh Circuit ordered that "[t]he district court, on remand, should review, in the first instance, the remedies ordered by the bankruptcy court. We express no opinion on that subject." Id. at

1315. The Eleventh Circuit also withheld judgment on the parties' requests regarding judicial assignment and consolidation of the proceedings.[3]  Id.

On remand, the case was reassigned from Judge Gold to the Honorable Kathleen A. Williams, United States District Judge.  (ECF No. 27).  It was subsequently transferred to the undersigned.  (ECF No. 28).  On September 6, 2012, the undersigned entered an Order consolidating the nine appeals[4] as case no. 10-cv-62035 and setting a uniform briefing schedule.  (ECF No. 29).  Initial Briefs (ECF Nos. 32–35), Response Briefs (ECF Nos. 36, 38–40), and Reply Briefs (ECF Nos. 42–45) were filed.

On March 26, 2013, the New Lenders, the Committee, and TOUSA moved for a ninety-day stay of the proceedings in order to try and settle many of the disputed claims.[5]  (ECF No. 51).  On March 27, 2013, this Court granted the Joint Motion for Stay.  (ECF No. 53).

On October 31, 2013, J Beck & Associates, Inc. filed a Motion for Substitution of the Liquidation Trustee as Plaintiff-Appellee.  (ECF No. 54).  J Beck & Associates, Inc., as Liquidation Trustee for the TOUSA Liquidation Trust (the "Trustee"), moved the Court to enter an Order substituting the Trustee as the successor-in-interest of the Committee.  The Motion stated that the New Lenders, some (but not all) of the Transeastern Lenders, the Committee, and

---

[3]  The Committee asked the Eleventh Circuit to remand the case to a different district judge and the Transeastern Lenders and the New Lenders asked the Court to reassign the case, if necessary, to a different bankruptcy judge.  The Committee also argued that consolidation of the various appeals before one judge would promote judicial economy.

[4] The nine appeals are: 10-cv-60017, 10-cv-60018, 10-cv-60019, 10-cv-61478, 10-cv-61681, 10-cv-61731, 10-cv-62032, 10-cv-62035, and 10-cv-62037.

[5] The Transeastern Lenders also consented to the stay but reserved the right to ask the Court to terminate the stay.  (ECF No. 51).  The Transeastern Lenders are composed of Group 1 and Group 2.  However, as Group 2 joins in Group 1's briefs, the Court will continue to refer to Group 1 and Group 2 collectively as the Transeastern Lenders.

TOUSA reached a settlement that was embedded in a Chapter 11 plan of liquidation.  The settlement resolved all of the issues that were in dispute between the settling parties.  Following the settlement, the only Appellants that remain are the non-settling Transeastern Lenders.  The Court granted the Trustee's Motion and substituted the Trustee as Plaintiff-Appellee for the Committee.  (ECF No. 64).

Also on October 31, 2013, the Trustee moved the Court to reopen the case and lift the stay.  (ECF No. 55).  The non-settling Transeastern Lenders (hereinafter referred to as "Appellants") filed Responses opposing the Trustee's Motion to lift the stay based on Executive Benefits Ins. Agency v. Arkison (In re Bellingham), 134 S. Ct. 2165 (2014), which was on appeal to the United States Supreme Court.  (ECF Nos. 58, 59).  The Trustee filed a Reply stating that it did not oppose Appellants' request to continue to stay the case until Bellingham was decided.  (ECF No. 60).  Accordingly, the Court entered an Order denying the Trustee's Motion and ordering the parties to file a motion to reopen the case within twenty days of the Supreme Court's decision in Bellingham.  (ECF No. 65).

Bellingham was decided on June 9, 2014.  On June 26, 2014, the parties moved to reopen the case and lift the stay.  (ECF Nos. 70, 71, 72).  Subsequently, on July 3, 2014, Appellants submitted a Notice advising the Court that the Supreme Court had granted a petition for certiorari in Wellness Int'l Network, Ltd. v. Sharif, 727 F.3d 751 (7th Cir. 2013), cert. granted, 82 U.S.L.W. 3496 (U.S. July 1, 2014) (No. 13-935).[6]  Based on Wellness International, Appellants suggested that the Court should continue to stay the case.  (ECF No. 73).

_____

[6] Wellness International Network, Ltd. v. Sharif, 135 S. Ct. 1932 (2015), was heard by the Supreme Court on January 14, 2015 and decided on May 26, 2015.

On September 5, 2014, the Court entered an Order reopening the case and directing the parties to file supplemental briefing on the impact of <u>Bellingham</u> and the interim settlements on the case.  (ECF No. 77).  The parties filed their Supplemental Briefs (ECF Nos. 80–83, 85–87).  Appellants requested oral argument (ECF No. 84), which the Court granted (ECF No. 88).  The Court ordered the parties to be prepared to argue: (1) how the Supreme Court's decision in <u>Bellingham</u> affects the Eleventh Circuit's decision in this case, (2) whether the bankruptcy court judgment should be reviewed <u>de novo</u> by this Court, and (3) the effects of the settlements on the litigation.  <u>Id.</u>  Oral argument was held before the undersigned on November 20, 2014.  <u>See</u> Hr'g Tr. from Nov. 20, 2014 ("Hr'g Tr.") (ECF No. 92).

On May 26, 2015, the Supreme Court issued its decision in <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932 (2015).  Appellants filed Notices of Supplemental Authority (ECF Nos. 93–94).  The Trustee also filed a Response to Appellants' Notices of Supplemental Authority and a Request for Status Conference (ECF No. 95), to which the Transeastern Lenders responded.  (ECF No. 97).  The Court now turns to the Eleventh Circuit's mandate.

## II.    DISCUSSION

On remand, the Eleventh Circuit ordered this Court to review the remedies ordered by the bankruptcy court.[7]  Before the Court can reach this issue, however, it must address Appellants'

---

[7] As previously mentioned, the Eleventh Circuit issued an Order reversing the Order of the district court, affirming the liability findings of the bankruptcy court, and remanding the case to the district to consider the remedies imposed by the bankruptcy court and the matters of assignment and consolidation.  The Court's findings as to liability and remedies will be discussed <u>infra</u>.  The Court will briefly address the matters of assignment and consolidation.  The issue of consolidation is moot since the undersigned consolidated the various appeals.  The issue of assignment is moot in part.  It appears that both sides to this litigation preferred the judge that found in their favor and asked for the case to be reassigned from the judge who did not.  The Committee asked the Eleventh Circuit to remand the case to a different district judge.  On

(footnote cont'd)

_____

remand, this case was reassigned to the undersigned from Judge Gold and so the Committee's argument for judicial reassignment is moot.

The only issue that remains is the Transeastern Lenders' request for the case to be reassigned from Bankruptcy Judge Olson to another bankruptcy judge.  On appeal to the district court, the Transeastern Lenders argued that they had "serious doubts about [Judge Olson's] ability to approach the Defendant's evidence and arguments fairly."  See Appeal Br. of the Transeastern Lenders, at 53, No. 10-60017-KMM (ECF No. 75).  Specifically, Transeastern Lenders took issue with Judge Olson's "nearly-verbatim" adoption of the Committee's proposed findings of fact and conclusions of law.  Id.  Transeastern Lenders also stated that Judge Olson "treated the Defendants and their arguments with aggressive hostility."  Id.

Judge Gold found Transeastern Lenders' arguments "persuasive."  See In re TOUSA, 444 B.R. 613 at 679 n.65.  Specifically, on review, Judge Gold determined that the bankruptcy court had adopted the Committee's proposed findings "verbatim" and thus "relaxed" the clearly erroneous standard of review for factual findings.  Id. at 667.  However, since Judge Gold quashed the bankruptcy court's order, he left the issue of reassignment for consideration by the Eleventh Circuit.

Transeastern Lenders argued for reassignment again before the Eleventh Circuit.  The Eleventh Circuit left the issue of reassignment for this Court to decide.

Upon review of the record and the proposed findings of fact and conclusions of law, this Court does not find a basis to remand this case to another bankruptcy judge.  In support of their remand argument, Transeastern Lenders cite the Court to 28 U.S.C. § 2106, which states that on remand a court with appellate jurisdiction may direct the entry of such appropriate judgement, decree, or order, or require such further proceedings to be had "as may be just under the circumstances." See Appeal Br. of the Transeastern Lenders, at 53, No. 10-60017-KMM (ECF No. 75). Transeastern Lenders also cite to Chudasama v. Mazda Motor Corp., 123 F.3d 1353 (11th Cir. 1997), which states "[t]hree factors inform our decision to reassign a case on remand: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to the gains realized from reassignment."  123 F.3d at 1373 (internal quotations omitted).  All three factors cited in Chudasama support the case remaining with Judge Olson.

Here, the Eleventh Circuit affirmed Judge Olson's findings on liability and this Court is referring the case to the bankruptcy court for a Report and Recommendation on the limited issue of the impact of the settlements on the remedies that Judge Olson ordered.  Judge Olson should have not have a problem putting any previous views and findings aside to deal with this limited issue and so the first factor cited in Chudasama favors Judge Olson remaining on this case.

Furthermore, the Court does not find compelling Transeastern Lenders' argument that Judge Olson cannot approach the evidence and arguments fairly.  One of the primary factors that the Transeastern Lenders rely upon is Judge Olson's adoption of the Committee's proposed findings
(footnote cont'd)

argument that the Supreme Court's decision in <u>Bellingham</u> is an intervening change of law that requires this Court to depart from the Eleventh Circuit's mandate affirming the bankruptcy court's liability findings under the clear error standard, and conduct a <u>de novo</u> review of the bankruptcy court's liability findings. The Court will first address Appellants' liability argument. The Court will then briefly address the remedies ordered by the bankruptcy court and the steps that need to be taken for that issue to be finally resolved.

### 1. The Eleventh Circuit's Mandate on Liability

As previously mentioned, on appeal, the Eleventh Circuit reviewed the bankruptcy court's findings of fact for "clear error." <u>See</u> <u>Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.)</u>, 680 F.3d 1298, 1310 (11th Cir. 2012). Under this standard, the Eleventh Circuit found that the bankruptcy court did not clearly err when it found that: (1) the Conveying Subsidiaries did not receive reasonably equivalent value in exchange for

---

of fact and conclusions of law, without significant alteration. However, the fact that a judge allowed a litigant to draft the court's order does not invalidate the order unless the party can demonstrate that the process by which the judge arrived at the order was fundamentally unfair. <u>See</u> <u>CBS, Inc. v. PrimeTime 24 Joint Venture</u>, 9 F. Supp. 2d 1333, 1346–47 (S.D. Fla. 1998) (citing <u>In Re Colony Square Co. v. Prudential Ins. Co. of America</u>, 819 F.2d 272, 276 (11th Cir. 1987), <u>cert. denied</u>, 485 U.S. 977 (1988)). In the instant matter, Judge Olson requested proposed findings of fact and conclusions of law from each side. The bankruptcy court thus had both submissions before it when it rendered its decision. That the bankruptcy court found the Committee's submission to be the correct statement of the case does not provide this Court with a basis to reassign the case. While adopting the submissions of one party almost wholesale may not be best practices, it does not demonstrate an inability on Judge Olson's behalf to approach the evidence and the arguments fairly, so long as the process is fundamentally fair. <u>See</u> <u>CBS</u>, 9 F. Supp. 2d at 1347. Thus, reassignment is not necessary to preserve the appearance of justice and so the second factor cited in <u>Chudasama</u> favors Judge Olson remaining on this case.

Finally, Judge Olson knows this case and the issues it presents inside and out. He is best equipped to prepare a Report and Recommendation on the limited issue of the impact of the settlements on the remedies that he ordered in this case and so the third factor cited in <u>Chudasama</u> clearly favors Judge Olson remaining on this case. Accordingly, Transeastern Lenders' request for this case to be reassigned to another bankruptcy judge is denied.

the liens they transferred to the New Lenders, and (2) the Transeastern Lenders were entities for whose benefit the liens were transferred.  Id.  On this basis, the Eleventh Circuit reversed the order of the district court and affirmed the liability findings of the bankruptcy court.  Id. at 1316.

Appellants now argue that the Supreme Court's decision in Bellingham, along with its earlier decision in Stern v. Marshall, 131 S.Ct. 2594 (2011), has changed the law so that "[t]he proceedings to date in this case have not adhered to the strict constitutional requirements" set forth in the two cases.  See Supplemental Br. of Transeastern Lenders, Group 1, on Effect of Supreme Court's Decision in Bellingham ("Appellants' Bellingham Br."), at 2 (ECF No. 82). Accordingly, Appellants argue that the Court should find that Bellingham provides a basis for the Court to depart from the Eleventh Circuit's mandate reversing the order of the district court and affirming the liability findings of the bankruptcy court.

     *a.  The Mandate Rule*

 "The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality and obedience within the judicial system."  United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996) (quoting Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc)); see also United States v. Amedeo, 487 F.3d 823, 829 (11th Cir. 2007).  "An appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal."  Id.  Thus, "[a] district court when acting under an appellate court's mandate, 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.'"  Id.  (quoting Litman, 825 F.2d at 1510–11).  "The mandate rule is simply an application of the law of the case doctrine to a specific set of facts."  Id.  (quoting

10

Litman, 825 F.2d at 1511). The settled law in this Circuit obligates a district court to follow the Eleventh Circuit's mandates and not to assert jurisdiction over matters outside the scope of a limited mandate, which constitutes abuse of discretion. Id. (citing Litman, 825 F.2d at 151l; Pelletier v. Zweifel, 987 F.2d 716, 718 (11th Cir. 1993) (per curiam) ("We have in this circuit a well-settled 'mandate rule' obligating district courts to adhere closely to the dictates of our opinions."); Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1440 n.2 (11th Cir. 1984) (per curiam) ("On remand a district court is not free to deviate from the appellate court's mandate.")).

The Eleventh Circuit has recognized three exceptions to the mandate rule: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior [appellate] decision was clearly erroneous and would work manifest injustice." Amedeo, 487 F.3d at 830 (quoting United States v. Stinson, 97 F.3d 466, 469 (11th Cir. 1996)). However, the Eleventh Circuit has stated that exceptions to the mandate rule must be applied "narrowly," and cautioned that "[a] district court should follow the law of the case as decided by the appellate court unless the court is certain that one of the three [exceptions] specifically and unquestionably applies." Leggett v. Badger, 798 F.2d 1387, 1389 n.2 (11th Cir. 1986).

> b. *Bellingham Does Not Provide a Basis for the Court to Depart from the Eleventh Circuit's Mandate*

Appellants argue that the second exception to the mandate rule applies here. Specifically, Appellants argue that Bellingham is controlling authority, and "[u]nder the rule enunciated in Bellingham, the Eleventh Circuit should have accorded deferential review to this Court's decision overturning the bankruptcy court's decision, but the Eleventh Circuit instead deferred to the bankruptcy court's decision, on the erroneous ground that it was a final adjudication subject only to clear-error review on facts issues." Appellants' Bellingham Br., at 5 (emphasis in the

11

original).  On this basis, Appellants ask the Court to review the bankruptcy court's decision under a <u>de novo</u> standard.

An intervening Supreme Court decision permits a district court to depart from a mandate of the Court of Appeals only if the Supreme Court decision "require[s] a contrary result." <u>Legett</u>, 798 F.2d at 1389; <u>see also</u> <u>Piambino v. Bailey</u>, 757 F.2d 1112, 1120 (11th Cir. 1985) (appellate court's decision must be followed unless an "intervening change in the controlling law dictates a different result").  The question before this Court is whether <u>Bellingham</u> justifies disregarding the mandate in this case, <u>i.e.</u>, whether <u>Bellingham</u> is controlling authority that requires a contrary result.  The Court finds that <u>Bellingham</u> does not require a contrary result.

In <u>Bellingham</u>, Bellingham Insurance Agency ("BIA") filed a voluntary Chapter 7 bankruptcy petition.  134 S. Ct. at 2169.  The bankruptcy trustee filed a complaint in the bankruptcy court against petitioner Executive Benefits Insurance Agency ("EBIA") and others alleging the fraudulent conveyance of assets from BIA to EBIA.  <u>Id.</u>  The bankruptcy court granted summary judgment for the trustee.  <u>Id.</u>  EBIA appealed to the district court, which affirmed the bankruptcy court's decision after a <u>de novo</u> review and entered judgment for the trustee.  <u>Id.</u>

While EBIA's appeal to the Court of Appeals for the Ninth Circuit was pending, the Supreme Court handed down <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), and held that Article III of the United States Constitution does not permit a bankruptcy court to enter final judgment on a counterclaim for tortious interference, even though final adjudication of that claim by the bankruptcy court was authorized by statute.  <u>Id.</u>  In light of <u>Stern</u>, EBIA moved to dismiss its appeal for lack of jurisdiction.  <u>Id.</u>  The Ninth Circuit rejected EBIA's motion and affirmed the district court.  <u>Id.</u>  It acknowledged the trustee's claims as "<u>Stern</u> claims," <u>i.e.</u>, claims designated

for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter. Id. at 2172. However, the Ninth Circuit concluded that EBIA had impliedly consented to jurisdiction, and that the bankruptcy court's judgment could be treated as proposed findings of fact and conclusions of law, subject to de novo review by the district court.[8] Id. at 2169–70.

On appeal, the Supreme Court held that "when, under Stern's reasoning, the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed de novo by the district court." Bellingham, 134 S.Ct. at 2168. Accordingly, the Supreme Court affirmed the decision of the Court of Appeals, upholding the

_____

[8] Stern cannot serve as the basis for an exception to the mandate rule. This is because Stern preceded the Eleventh Circuit's decision in this case. Stern was argued on January 18, 2011 and decided on June 23, 2011. The Eleventh Circuit appeal in this case was docketed on March 11, 2011, oral argument was held on March 21, 2012, and the decision was issued on May 15, 2012. While Transeastern Lenders failed to raise Stern in their briefing, on November 23, 2011, Transeastern Lenders sent a short letter, pursuant to Federal Rule of Appellate Procedure 28(j), submitting that Stern was both "pertinent and significant" to the appeal, prior to oral argument. See Appeal No. 11-11071. In the letter, Transeastern Lenders argued that the bankruptcy court lacked constitutional authority to enter final judgment on the fraudulent transfer claims against Transeastern Lenders because they did not seek to rule on proofs of claim asserted by Transeastern Lenders, but instead sought money damages to augment the estate. Id. On November 29, 2011, the Committee filed a Response arguing that Transeastern Lenders forfeited their right to assert this argument since they did not make the argument below and expressly acknowledged that the bankruptcy court's findings were subject to clear error review before the district court. Id. The Committee further argued that the case was a "core proceeding" under 28 U.S.C. § 157(b). Id.

Transeastern Lenders made the same argument at oral argument that Appellants make now— namely, that Stern changed the law. Hr'g Tr., at 25–26. The Eleventh Circuit questioned the parties about the standard of review that the district court should have used to review the decision of the bankruptcy court in light of Stern. Id. The Eleventh Circuit either did not find the Transeastern Lenders argument on this point compelling, or found that the Transeastern Lenders had forfeited this argument by failing to raise it sooner, when it determined that the bankruptcy court's order was subject to deferential appellate review.

district court's decision because the district court conducted a de novo review of the bankruptcy court's decision.

Importantly, the Supreme Court explicitly said in its Order, "[n]ow we must determine whether the procedures set forth in § 157(c)(1) apply to the fraudulent conveyance claims at issue in this case. The Court of Appeals held, and we assume without deciding, that the fraudulent conveyance claims in this case are Stern claims." Id. at 2174 (emphasis added). Appellants argue that, after Bellingham, it is clear that fraudulent transfer claims are Stern claims. See Appellants' Supplemental Bellingham Br., at 2–3. However, while the Supreme Court in Bellingham clarified the bankruptcy court's role in dealing with Stern claims and the appropriate standard of review to apply to Stern claims, it is plain from the language of the Opinion that it did not affirmatively state that fraudulent conveyance claims are Stern claims.

At the November 20th hearing, the Trustee argued:

> Despite all the predications that the Transeastern Lenders made a year ago when they asked this court to stay further proceedings and wait for Bellingham, the case, when it finally came down, was exceedingly narrow. The Supreme Court did not decide whether fraudulent conveyance claims are governed by Stern at all. They did not decide whether parties can consent to the jurisdiction of a bankruptcy court to enter a final judgment even if Stern applies. They did not decide whether the acts in that case constituted consent and they didn't decide whether, even if consent is impossible, nevertheless Stern claims can be forfeited as the Transeastern Lenders did by failing to raise them in their opening brief in the Eleventh Circuit. The only thing Bellingham decided, the only thing it decided, is that if it is a Stern claim, and if consent is not possible or wasn't given, then in that event, a bankruptcy court may issue proposed findings of fact and conclusions of law that are subject to de novo review. That's all Bellingham held.

Hr'g Tr., at 28–29. The Court agrees with the Trustee's characterization of the holding in Bellingham as narrow. Bellingham merely clarifies that a bankruptcy court may issue findings of fact and conclusions of law when confronted with a Stern claim, and, that those findings should be reviewed under a de novo standard of review. Thus, this Court cannot square

14

Bellingham with the exception to the mandate rule that requires an intervening change in
controlling law that dictates a contrary result. See Tamayo, 80 F.3d at 1520.

Furthermore, Appellants assert that "[f]raudulent transfer claims are plainly Stern claims
that a bankruptcy court cannot finally adjudicate." Appellants' Bellingham Br., at 3. "Plainly"
is an overstatement. Circuits are split over whether, and what kind of, fraudulent transfer claims,
can be finally adjudicated by a bankruptcy court. See, e.g., Galaz v. Galaz (In re Galaz), 765
F.3d 426, 431–432 (5th Cir. 2014) (vacating and remanding the district court's Order affirming
the bankruptcy court's entry of final judgment on a fraudulent transfer claim based on implied
consent and stating that Article III prohibits the bankruptcy court from finally adjudicating
claims "arising only under state-law" or claims that "would augment the bankrupt estate" but are
not necessarily resolved in the claims allowance process); Marshall v. Picard (In re Bernard L.
Madoff Inv. Sec. LLC), 740 F.3d 81, 95 (2d Cir. 2014) (finding that the bankruptcy court can
adjudicate fraudulent conveyance action against the defendants because the defendants filed a
proof of claim against the estate, and, in order to rule on that claim, the bankruptcy court was
required to first resolve the fraudulent transfer issue); Peterson v. Somers Dublin Ltd., 729 F.3d
741, 747 (7th Cir. 2013) (finding that a bankruptcy judges can adjudicate a trustee's avoidance
actions against creditors who have submitted proofs of claim); Executive Benefits Ins. Agency v.
Arkison (In re Bellingham), 702 F.3d 553, 561 (9th Cir. 2012) ("[F]raudulent conveyance
claims, because they do not fall within the public rights exception, cannot be adjudicated by non-
Article III judges."); Waldman v. Stone, 698 F.3d 910, 918–19 (6th Cir. 2012) (concluding that
only an Article III court can enter final judgment on a fraudulent conveyance claim filed by a
bankrupt estate's trustee against a non-creditor); Onkyo Europe Electronics GMBH v. Global
Technovations Inc. (In re Global Technovations Inc.), 694 F.3d 705, 722 (6th Cir. 2012) (finding

that the bankruptcy court had constitutional jurisdiction under <u>Stern</u> to adjudicate the state law

fraudulent transfer claim because Onkyo filed a proof of claim against the estate and it was not

possible to rule on Onkyo's proof of claim without first resolving the fraudulent transfer issue).

In fact, Appellants concede that there is a circuit split on this issue, however, they argue that

"lower courts" have "overwhelmingly" found that fraudulent transfer claims are <u>Stern</u> claims.

Appellants' <u>Bellingham</u> Br., at 2–3.  While this may be true, lower courts do not provide a basis

for the Court to depart from the Eleventh Circuit's mandate.[9]

---

[9] Furthermore, if we look to courts in this Circuit, courts have generally either found that, after
<u>Stern</u>, it is unclear whether bankruptcy courts have the power to enter final judgment on
fraudulent transfer claims, or whether bankruptcy courts have the power to enter final judgment
on fraudulent transfer claims.  <u>See, e.g.</u>, <u>Mukamal v. ABN AMRO Fund Servs. Bank Ltd. (In re
Palm Beach Fin. Partners, L.P.)</u>, No. 13-cv-80102-KAM, 2013 WL 2036161, at *3–4 (S.D. Fla.
May 14, 2013) (stating that "there is a decisional split regarding whether fraudulent conveyance
claims may be adjudicated by bankruptcy courts" and thus, the bankruptcy court should initially
determine whether it has constitutional authority to render a final judgment on the fraudulent
conveyance claim at issue, which the Court will review <u>de novo</u> and if the Court determines that
the bankruptcy court erred in rendering final judgment, it will simply treat the bankruptcy court's
decision as a report and recommendation); <u>Stettin v. TD Bank, N.A. (In re Rothstein, Rosenfeldt,
Adler, P.A.)</u>, No. 11-62172, 2012 WL 827124 (S.D. Fla Mar. 9, 2012) (denying defendant's
motion to immediately withdraw reference and noting that, while uncertainty exists following
<u>Stern</u>, the majority of courts have determined that the Supreme Court did not intend to deprive
the bankruptcy courts of any role in dealing with fraudulent transfer actions); <u>Bakst v.
Smokemist, Inc. (In re Gladstone)</u>, 513 B.R. 149, 159–60 (Bankr. S.D. Fla. 2014) (finding that if
the case involved fraudulent transfers the court would be "guided by 11th Circuit precedent that
fraudulent transfer claims brought under 11 U.S.C. §§ 548 or 544 are core matters subject to
entry of final orders and judgments in the bankruptcy court"); <u>Bakst v. United States (In re Kane
& Kane)</u>, No. 09-15556-EPK, 2013 WL 1197609, at *15 (Bankr. S.D. Fla. Mar. 25, 2013)
(overruling defendant's objection that the bankruptcy court's entry of final judgment on a
fraudulent transfer action would violate Article III of the Constitution); <u>Menotte v. United States
(In re Custom Contractors, LLC)</u>, 462 B.R. 901, 908 (Bankr. S.D. Fla. 2011) ("This Court
concludes that the Trustee's fraudulent transfer claims are core proceedings stemming from the
bankruptcy itself for which this Court has authority to enter final orders.  <u>Stern</u>'s narrow holding
does not apply to the claims at issue."); <u>Garvin v. Diebolt (In re Aldrich)</u>, Bankr. No. 12-31131,
Adversary No., 14-03015, 2014 WL 7162230, at *3–5 (Bankr. N.D. Fla. Dec. 15, 2014) ("The
Court has constitutional authority to enter a final order on the Plaintiff's fraudulent transfer
claims.  Even if the Court does not have this authority, the Defendant has consented to entry of
final order.  Further, the Court has authority to enter proposed findings of fact and conclusions of
(footnote cont'd)

The reality is that it remains unclear in this Circuit whether fraudulent transfer claims may be the subject of final orders and judgments in the bankruptcy court consistent with Article III. In <u>Bellingham</u>, the Supreme Court specifically reserved ruling on the issue. It would not be appropriate for this Court to extrapolate from <u>Bellingham</u> and extend its holding to avert the Eleventh Circuit's mandate. <u>See</u> <u>McNeal v. GMAC Mortgage., LLC (In re McNeal)</u>, 735 F.3d 1263, 1265–66 (11th Cir. 2012) ("As we have stated, '[o]bedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing.'" (quoting <u>Atl. Sounding Co. v. Townsend</u>, 496 F.3d 1282, 1284 (11th Cir. 2007))). Accordingly, this Court declines Appellants' request to revisit the Eleventh Circuit's decision reversing the district court and affirming the bankruptcy court's liability findings.[10]

---

law in the event that it lacks authority to enter a final order."); <u>Kapila v. SunTrust Mortgage, Inc. (In re Pearlman)</u>, 515 B.R. 887, 892 n.21 (Bankr. M.D. Fla. 2014) (finding that by filing a motion for partial summary judgment on trustee's fraudulent transfer avoidance and recovery claims, and making no reference to its earlier <u>Stern</u> objection, the defendant consented to the bankruptcy court's jurisdiction and waived any objection to its authority, as a non-Article III court, to finally adjudicate fraudulent transfers); <u>Tyler v. Banks (In re Tyler)</u>, 493 B.R. 905, 913–20 (Bankr. N.D. Ga. 2013) (concluding that the fraudulent transfer action at issue was within the Court's core jurisdiction and thus the Court had the authority to enter a final order); <u>Cifelli v. Blue Star Residential, LLC (In re Miles)</u>, 477 B.R. 266, 272–273 (Bankr. N.D. Ga. 2012) ("The bankruptcy court retains the constitutional power to enter final judgment in a fraudulent conveyance action, but even in the absence of such constitutional authority, the court has the power to hear such cases and present findings of fact and conclusions of law to the District Court.").

[10] The Trustee initially argued in its Supplemental Brief that <u>Bellingham</u> did not constitute an intervening Supreme Court decision that permits this Court to depart from the Eleventh Circuit mandate because <u>Bellingham</u> did not address whether a party can consent to bankruptcy adjudication of a <u>Stern</u> claim. This issue was subsequently addressed by the Supreme Court in <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932 (2015). In <u>Wellness</u>, the Supreme Court found that Article III permits bankruptcy judges to adjudicate <u>Stern</u> claims with the parties' knowing and voluntary consent. <u>Id.</u> at 1947–49. Consent does not need to be express. <u>Id.</u> at 1947. Following the Supreme Court's decision in <u>Wellness</u>, the parties filed supplemental briefs regarding <u>Wellness</u>' impact on the instant case.

(footnote cont'd)

## 2. The Eleventh Circuit's Mandate on Remedies

This case was remanded so that the Court could review the remedies ordered by the bankruptcy court. In rulings entered in October 2009 and July 2010, the bankruptcy court adopted a remedy designed to unwind the July 31 Transaction and restore the parties to the positions that they held prior to the transaction.

After the Eleventh Circuit entered its mandate, and this case was fully briefed on remand, certain parties asked the Court to stay the case so that a settlement could be worked out. Certain

---

Appellants argue that they did not consent to the bankruptcy court's jurisdiction. See Appellants' Notice of Supplemental Authority (ECF No. 93). Specifically, Appellants argue that, prior to Stern, Appellants could not withhold consent to bankruptcy adjudication of core claims and so the issue of consent was essentially a non-issue. Id. at 2. Once Stern was decided and Appellants were on notice that they could withhold consent to final adjudication by the bankruptcy court, Appellants filed their objection with the Eleventh Circuit. Id.

The Trustee, on the other hand, argues that Appellants have manifested consent to bankruptcy court adjudication "many times over." See Liquidation Trustee's (1) Response to Appellants' Notice of Supplemental Authority and (2) Request for a Status Conference, at 1 (ECF No. 95). Appellants did not object to the bankruptcy court's authority to enter final judgment as the case proceeded through more than a year of pre-trial proceedings and a trial. Id. at 2. The Trustee argues that, even prior to Stern, in light of the Supreme Court's decision in Granfinaciera, S.A. v. Nordberg, 492 U.S. 33 (1989), Appellants were on notice that they could object to final adjudication by the bankruptcy court. Id. at 3–4. "Against this background" the Trustee argues that Appellants' conduct "can be understood only as consent to bankruptcy court adjudication." Id. at 4.

Additionally, the Trustee argues that Wellness confirmed that Stern claims are subject to forfeiture. See id. This concept of forfeiture was mentioned supra at footnote 8. The Trustee argues that, even if the Transeastern Lenders did not consent to bankruptcy adjudication, they forfeited their claim under Stern by failing to raise it until "the eve of oral argument through a Notice of Supplemental Authority." Id. at 5.

While consent and/or forfeiture could provide an alternative bases for this Court to decline Appellants' request to revisit the Eleventh Circuit's mandate on liability, the Court sees no reason to address these issues since it finds that, regardless of whether Appellants consented to bankruptcy jurisdiction or forfeited their Stern claim, Bellingham does not represent an intervening change of law that allows the Court to depart from the Eleventh Circuit mandate.

parties subsequently filed stipulations of dismissal (ECF Nos. 56, 57, 75) and the Court entered orders of dismissal (ECF Nos. 66–67, 79). When the Court reopened the case, it ordered the remaining parties to brief the impact of the settlements on the remedies ordered by the bankruptcy court. (ECF No. 77).

Appellants' Supplemental Brief argues that: (1) by agreeing to the New Lenders settlement and avoiding the liens and obligations, the Trustee has chosen his remedy, consistent with the requirements of 11 U.S.C. § 550, and cannot now recover the value of the transferred liens; (2) any disgorgement from the Appellants must be reduced by the Monarch settlement;[11] and (3) any disgorgement from the Appellants must be offset by the amount of the director and officer settlement.[12] See Supplemental Br. of Transeastern Lenders, Group 1, on Effect of the Trustee's Recent Settlements (ECF No. 83). Appellants argue that the settlements have had a "dramatic effect on the issues that are before the court and on the damages issues." Hr'g Tr., at 6. The Trustee, on the other hand, argues that the only effect of the settlements on the Appellants' appeal is to moot Appellants' challenge to the award of transaction costs, litigation expenses, and diminution in value of the unlawfully transferred liens, to the Conveying Subsidiaries. See Liquidation Trustee's Supplemental Br. Regarding Effect of the Settlement (ECF No. 81). Otherwise, the Trustee's Brief highlights the issues that still remain following the settlements. Id.

On November 20, 2014, the Court held a hearing in the instant matter. The Court asked the Trustee whether the impact of the settlements on the remedy ordered by the bankruptcy court

---

[11] The Monarch settlement is a settlement between the Trustee, TOUSA, and certain former Transeastern Lenders. (ECF No. 75).

[12] The director and officer settlement is a $67 million settlement between the parties and certain director and officer insurance carriers.

should, in the first instance, be reviewed by the bankruptcy court. Hr'g Tr., at 30. The Trustee thought that this was a "good suggestion" because, although the bankruptcy court approved the settlement and packaged it as part of the plan, the question of whether "there is any implication for the balance of the remedies in the wake of that settlement" had not been put to the bankruptcy court, and the question struck him "as a kind of question that is best put in the first instance to the bankruptcy court," and then this Court "could sit in an appellate capacity and review that question." Id. at 31. The Trustee had no objection to having the bankruptcy court adjudicate the effect, if any, of the settlements on the prescribed remedies. Id. at 33. Appellants also stated that they had no objection to the Court referring the remedy issue to the bankruptcy court for a report and recommendation.[13] Hr'g Tr., at 45–46. Accordingly, this Court will refer to the bankruptcy court for consideration in the first instance the issue of the impact of the settlements on the remedies ordered by the bankruptcy court.

---

[13]Appellants did, however, point out their concern with the case being referred back to Judge Olson. This concern was addressed supra at footnote 7.

### III.     CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that this matter is referred to the Honorable John K. Olson, United States Bankruptcy Judge, for a Report and Recommendation regarding the impact of the interim settlements on the remedies ordered by the bankruptcy court.

This case is temporarily STAYED until Judge Olson enters the Report and Recommendation, at which time, the Court will lift the stay.

Liquidation Trustees' Motion for a Status Conference (ECF No. 95) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of June, 2015.

_____

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:     All counsel of record